United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 05-41684
_____

LINDA FREEMAN,

Plaintiff-Appellee,

versus

JASON GORE, Smith County Deputy Sheriff; JEFF BRAGG, Smith
County Deputy Sheriff; BRIAN ALLISON, Smith County Deputy
Sheriff,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before HIGGINBOTHAM, DENNIS, AND CLEMENT, Circuit Judges.

DENNIS, Circuit Judge:

Defendants Jason Gore, Jeff Bragg, and Brian Allison appeal the district court's denial of their motions for summary judgment on the basis of qualified immunity in this 42 U.S.C. § 1983 action. For the reasons set forth below, we AFFIRM the district court's denial of summary judgment on plaintiff's unlawful arrest claim and REVERSE the district court's denial of summary judgment on plaintiff's excessive force claim.

1

## I.  Background and Proceedings Below

On October 4, 2004, Deputies Jason Gore, Jeff Bragg and Brian Allison (collectively, the "deputies") of the Smith County, Texas Sheriff's Department attempted to serve a felony arrest warrant on Kevin Freeman ("Kevin") at his mobile home, located at 16449 County Road 15.  When the deputies received no response to their knocks at the door of the mobile home, they called a telephone number that they had on file for Kevin.  The deputies heard the phone ring inside the mobile home. Eventually, a woman, later identified as Kevin's sister, Sheila Freeman ("Sheila"), answered the phone.  Sheila told the deputies that she was not inside Kevin's mobile home, but rather was at the house next door, which belonged to Kevin and Sheila's mother, plaintiff Linda Freeman ("Freeman").  Kevin's mobile home, 16449 County Road 15, sat very near Freeman's house, 16447 County Road 15, and the deputies noticed that wires and cables ran between the two residences.  When asked why she had answered Kevin's phone, Sheila responded that it was a cordless phone that could pick up calls next door.  At some point during this conversation, Sheila stepped out of the house next door.  Sheila also informed the deputies that Kevin was not at his home.

While Deputy Gore was speaking with Sheila, Freeman emerged from her house and began yelling at the deputies. When the deputies asked Freeman whether they could enter her home to search for her son, Freeman responded that the last time deputies searched her house, they had trashed it, and that she would not permit the deputies to enter her home unless they had a search warrant for her address. Deputy Gore then told Freeman that he could arrest her if she did not permit the deputies to search her home. Freeman responded by saying that the deputies would just have to arrest her. At that point, Deputy Gore instructed Freeman to place her hands behind her back, and Deputy Allison handcuffed her and placed her in the back of his patrol car.[1]

The district court noted that it was undisputed that Freeman spent at least some time in the patrol car without air conditioning or ventilation. The parties differ as to the amount of time that Freeman spent in the car, however. Freeman asserts that she was in the car without air conditioning for between 30 and 45 minutes. Freeman also claims that, despite knowing that she had a heart condition, the deputies did not

---

[1]After Freeman was handcuffed and placed in the patrol car, Gore received consent from Sheila to search the house, but the deputies, apparently convinced by that point that Kevin was not inside, did not enter the house.

3

allow her daughter to retrieve her nitroglycerin. The deputies offer contradictory accounts of how long Freeman was in the patrol car, ranging from 5 to 10 minutes, to 30 to 45 minutes. In addition, Deputy Bragg stated that he turned on the air conditioning after approximately 30 seconds or one minute.

Deputy Gore contacted one of his superiors, Lieutenant Shelton, from the scene and informed him that he had arrested Freeman for the offense of Hindering Apprehension. During that conversation, Shelton instructed Gore that he could not search Freeman's house without a warrant. Gore disagreed, at which point another of his superiors, Sergeant North, also informed him that he could neither search Freeman's house nor arrest her. After that conversation, Gore released Freeman from the patrol car and removed the handcuffs.[2]

In December 2004, Freeman filed this action against the deputies, alleging that they unlawfully arrested her and that they used excessive force in effectuating the arrest. The deputies moved for summary judgment, claiming that the facts that Freeman alleged did not establish a violation of Freeman's constitutional rights and that, even if they did, the deputies

---

[2]Deputy Gore was ultimately fired from the Smith County Sheriff's Department based both on his failure to timely file a report concerning this incident and on his superiors' belief that the report he later filed was untruthful.

were entitled to summary judgment on the basis of qualified immunity. The district court denied the deputies' motions in their entirety. With respect to Freeman's unlawful arrest claim, the court held that, for purposes of summary judgment, Freeman had shown that the deputies' actions violated her Fourth Amendment right to be free from unreasonable seizures. Specifically, the court held that because the deputies had no right to search Freeman's house, they likewise could not arrest or threaten to arrest Freeman for refusing to permit them to search the house without a warrant. The district court also found that the deputies' conduct in arresting Freeman was objectively unreasonable in light of clearly established law. The district court expressly rejected the deputies' arguments that (i) they simply detained, rather than arrested, Freeman, and that they had the requisite reasonable suspicion to do so; and (ii) they had probable cause to arrest Freeman for Interference with Public Duties, in violation of Tex. Penal Code Ann. § 38.15, and Hindering Apprehension, in violation of Tex. Penal Code Ann. § 38.05.

With respect to Freeman's excessive force claim, the district court held that Freeman's allegations were sufficient to create a triable issue of fact. The court noted that

Freeman claimed that the deputies twisted her arms behind her back and "jerked her all over the carport" when they handcuffed her and took her to the patrol car. The court also noted that Freeman alleged that the handcuffs left bruises on her hands and arms, for which she had to seek medical treatment. Viewing these facts in the light most favorable to Freeman, the district court concluded that the deputies were not entitled to summary judgment on her excessive force claim.

## II. Jurisdiction

A defendant in a section 1983 action can immediately appeal a district court's denial of a motion for summary judgment based on qualified immunity under the collateral order doctrine to the extent that the appeal turns on a question of law. Flores v. City of Palacios, 381 F.3d 391, 393 (5th Cir. 2004) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). Where the district court has denied summary judgment on the ground that material issues of fact exist as to the plaintiff's claims, this court lacks jurisdiction to review the court's determination that a genuine fact issue exists. See Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004) (en banc); Martinez-Aquero v. Gonzalez, 459 F.3d 618, 621 (5th Cir. 2006). This court can, however, review whether any factual dispute found by

6

the district court is material for summary judgment purposes; that is, the court can consider the legal sufficiency of the facts that the district court found to be supported by the summary judgment record. Kinney, 367 F.3d at 348; Aucoin v. Harvey, 306 F.3d 268, 272 (5th Cir. 2002); Wagner v. Bay City, 227 F.3d 316, 320 (5th Cir. 2000). In so doing, the court assumes that the plaintiff's factual assertions are true and determines whether those facts are sufficient to defeat the defendant's motion for summary judgment. Kinney, 367 F.3d at 348; Martinez-Aguero, 459 F.3d at 621; Wagner, 227 F.3d at 320. Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity "must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal." Gonzales v. Dallas County, 249 F.3d 406, 411 (5th Cir. 2001); see Kinney, 367 F.3d at 348 & n.11.

In this case, the deputies recognize the limited nature of the court's jurisdiction on this interlocutory appeal, and they therefore concede that, for purposes of this appeal, they must accept Freeman's version of any factual dispute between the parties. Accordingly, we find that we have jurisdiction to consider the merits of the deputies' appeal.

### III.  Standard of Review and Applicable Law

This court reviews <u>de novo</u> the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity.  <u>See</u> <u>Martinez-Aguero</u>, 459 F.3d at 621 ("Our review of the legal significance of the facts is <u>de novo</u>."); <u>Flores</u>, 381 F.3d at 394 ("We review <u>de novo</u> the scope of clearly established law and the objective reasonableness of the defendant government official's actions."); <u>Aucoin</u>, 306 F.3d at 271 ("We review de novo the denial of a public official's motion for summary judgment based on qualified immunity.").

This court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity.  First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights.  <u>See, e.g.</u>, <u>Tarver v. City of Edna</u>, 410 F.3d 745, 750 (5th Cir. 2005); <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc); <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001).  If not, our analysis ends.  If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly

established law at the time of the conduct in question.  See, e.g., Tarver, 410 F.3d at 750; Glenn, 242 F.3d at 312.  To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.  See Glenn, 242 F.3d at 312; Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000); see also Tarver, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").

## IV.  Freeman's Wrongful Arrest Claim

The deputies advance several arguments in support of their claim that the district court erred in denying their motion for summary judgment on Freeman's wrongful arrest claim.  First, they assert that the district court improperly considered the deputies' subjective motivations when determining whether their actions violated Freeman's constitutional rights.  Second, the deputies claim that, whether they merely detained Freeman or actually arrested her, the undisputed facts do not show a violation of Freeman's constitutional rights.  Third, the deputies assert that, in any event, they are entitled to

qualified immunity because their actions were not objectively unreasonable in light of clearly established law. We consider each argument in turn.

## A. The Standard Applied by the District Court

Although the district court recited an accurate legal standard for the probable cause determination, several passages from the district court's opinion suggest that it improperly focused on the deputies' subjective motivations for detaining Freeman.[3] See Freeman v. Gore, No. 6:04-CV-526, slip op. at 16 (E.D. Tex. Oct. 5, 2005) ("[Deputy Gore] did not have the option of threatening to or actually arresting Freeman because she chose to exercise a constitutional right that was clearly established over twenty years ago."); id. at 19 (noting that "Deputy Gore admitted in his sworn testimony that he arrested Freeman because she was irate and she wouldn't allow him to interview her"); id. at 23 (discussing evidence concerning defendants' subjective reasons for detaining Freeman). Even assuming that the district court applied an incorrect standard, however, defendants are entitled to reversal only if this

_____

[3]See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.") (internal citations omitted).

court, applying the correct legal standard, determines that they are entitled to summary judgment.

**B. Did the Deputies Violate Freeman's Constitutional Rights?**

As a general matter, it is beyond question that Freeman has a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause. See, e.g., Flores, 381 F.3d at 402; Glenn, 242 F.3d at 313. The deputies make a number of arguments as to why their arrest or detention of Freeman in this case was lawful. The deputies first argue that they did not arrest Freeman, but rather simply detained her. They claim that this detention was permissible both under the principles of Michigan v. Summers, 452 U.S. 692 (1981), and because they had reasonable suspicion to believe that Freeman had committed the offenses of Interference with Public Duties and Hindering Apprehension. They also argue that, even if they did arrest Freeman, they had probable cause to arrest her for those offenses.

### 1. Michigan v. Summers

In Summers, the Supreme Court recognized a specific exception to the general principle that a warrantless police seizure of a person requires probable cause by holding that a valid search warrant "implicitly carries with it the limited

authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705. The Summers court began with the recognition that certain types of police detention "constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause." Id. at 699. After balancing the intrusion imposed by detaining the occupants of a residence subject to search pursuant to a lawful warrant against the law enforcement justifications for such detention, the Court concluded that this type of detention was reasonable under the Fourth Amendment. The Court reasoned that the connection between an occupant and the home for which the search warrant was issued "gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." Id. at 703-04. In Anderson v. United States, 107 F. Supp. 2d 191 (E.D.N.Y. 2000), upon which the deputies also rely, the court applied the Summers rule to permit the detention of the other occupants of a home during the execution of a valid arrest warrant for someone reasonably believed to be one of the home's

12

residents.[4]

Neither <u>Summers</u> nor <u>Anderson</u> helps the deputies here.  In this case, the deputies had a warrant for the arrest of Freeman's son, Kevin, who resided at 16449 County Road 15. While <u>Summers</u> and <u>Anderson</u> would authorize the deputies to detain anyone found at that address during the execution of their arrest warrant for Kevin, nothing in either of those cases provides authority for the proposition that the deputies could detain Freeman outside of her own home, 16447 County Road 15, while they inquired about Kevin's whereabouts.  Because Freeman was at her own home when she was detained, and because the deputies had no right to search <u>Freeman's home</u> based on their arrest warrant for Kevin,[5] the detention cannot be justified under <u>Summers</u>.

## 2.  <u>Arrest v. Detention</u>

The deputies next argue that they were justified in detaining Freeman for violating Texas law.  The deputies first

---

[4]In <u>Anderson</u>, the subject of the arrest warrant was not, in fact, a resident of the home searched, but the district court found that the police could use the warrant to enter the house if they reasonably believed that the subject of the warrant resided there. <u>See</u> 107 F. Supp. 2d at 196.

[5]<u>See</u> <u>Steagald v. United States</u>, 451 U.S. 204, 213-14 (1981) (arrest warrant does not give officers authority to search home of third-party, even if officers have probable cause to believe that suspect is within).

13

assert that, because they simply detained Freeman and did not arrest her, they needed only a reasonable suspicion that she was violating the law. The district court rejected this argument because it found that, viewing the facts in the light most favorable to Freeman, the deputies arrested her, rather than merely detaining her. We agree.

Police detention constitutes an "arrest," such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest. See United States v. Corral-Franco, 848 F.2d 536, 540-41 (5th Cir. 1988); United States v. Bengivenga, 845 F.2d 593, 596-97 (5th Cir. 1988) (en banc). In this case, viewing the summary judgment evidence in the light most favorable to Freeman, a reasonable person in her position would believe that her freedom was restrained to a degree typically associated with arrest. The district court found that Gore threatened Freeman with arrest if she did not permit the deputies to search her home; that Freeman responded by saying something to the effect of, "Have at it;" that Gore then instructed Freeman to place her hands behind her back; and that Freeman was then handcuffed and placed in the back of the

14

police car.  In addition, Freeman alleges that she was left in the car for some 30 to 45 minutes.  On these facts, a reasonable person in Freeman's situation would surely believe that she had been restrained to an extent that normally accompanies a formal arrest.

### 3.  <u>Probable Cause</u>

The deputies argue that, even if Freeman was arrested, they had probable cause to arrest her for both Interference with Public Duties, Tex. Penal Code Ann. § 38.15, and Hindering Apprehension, Tex. Penal Code Ann. § 38.05.  Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest "'are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  <u>Flores</u>, 381 F.3d at 402 (quoting <u>United States v. Levine</u>, 80 F.3d 129, 132 (5th Cir. 1996)).

### a.  <u>Interference with Public Duties</u>

Texas Penal Code Ann. § 38.15, Interference with Public Duties, provides that a person commits an offense if she "interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."  The statute contains an express defense to prosecution, however, if

15

"the interruption, disruption, impediment, or interference alleged consisted of speech only." Id.

The deputies argue that Freeman's conduct upon emerging from her home — yelling and screaming at the deputies — created probable cause to arrest her for Interference with Public Duties because she was interfering with their ability to investigate the whereabouts of her son, Kevin. The district court rejected the deputies' argument. It found that Freeman only "interfered" with the deputies' attempt to conduct an unlawful, warrantless search of her home, not with the deputies' general ability to investigate Kevin's whereabouts. Because the deputies were not granted the authority by law to conduct a warrantless search of Freeman's home, the court held that a reasonable officer could not conclude that Freeman was committing the offense of Interference with Public Duties.

Viewing the facts in Freeman's favor, her allegedly disruptive conduct was essentially limited to insisting that the deputies could not enter her home unless they had a search warrant. Had Deputy Gore not told Freeman that he did not need a warrant to search her home and that he could arrest her if she did not permit them to search the home, it is not at all clear that Freeman would have disrupted the deputies' broader

16

investigation. Although the probable cause inquiry is an objective one, it must nevertheless be conducted in light of the actual facts known to the officer at the time of the arrest. See Devenpeck, 543 U.S. at 152 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Here, at the time of Freeman's arrest, the deputies knew that Freeman would not consent to a search of her home without a warrant; that they did not have a warrant to search Freeman's home; and that Freeman's son Kevin resided not in Freeman's home, but in the mobile home next door. On those facts, a reasonable officer would have known that he could not lawfully search Freeman's home,[6] and Freeman was not, therefore, interfering with the exercise of any authority granted to the deputies by law.

Moreover, the deputies did not have probable cause to arrest Freeman because her conduct consisted exclusively of speech. Texas courts have recognized that merely arguing with police officers about the propriety of their conduct, including about whether they have the legal authority to conduct a search, falls within the speech exception to section 38.15. In

_____

[6]See Steagald, 451 U.S. at 213-14.

17

Carney v. State, 31 S.W.3d 392, 394, 398 (Tex. Ct. App. 2000), the court reversed a defendant's conviction for Interference with Public Duties where the defendant's conduct consisted solely of arguing with officers over validity of a search warrant, which resulted in delaying the officers' entry into the home. After noting that the defendant had not made physical contact with any of the officers or physically obstructed their entry into the home, the court concluded that the evidence could not support a conviction because "[u]nder section 38.15, arguing with the officers does not constitute an actionable offense." Id. at 398. As in Carney, Freeman's conduct here consisted only of arguing with the deputies about whether they had the right to search her home. Although Freeman was, in the district court's words, "yelling" and "screaming," that alone does not take her conduct out of the realm of speech,[7] and, viewing the district court's summary judgment facts in the light most favorable to Freeman, there is nothing to indicate that her conduct involved anything other than speech or that she physically obstructed the deputies in

---

[7]See Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003) (noting that "the First Amendment protects even profanity-laden speech directed at police officers" and that "[p]olice officers reasonably may be expected to exercise a higher degree of restraint than the average citizen").

any way. Accordingly, the deputies did not have probable cause to arrest Freeman for Interference with Public Duties.

### b. Hindering Apprehension

Texas Penal Code Annotated section 38.05(a), Hindering Apprehension, provides:

> A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:
>
> (1) harbors or conceals the other;
>
> (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or
>
> (3) warns the other of impending discovery or apprehension.

The deputies argue that probable cause existed to arrest Freeman for Hindering Apprehension because a reasonable person could have concluded that Freeman's actions were intended to alert Kevin to impending discovery and that she refused to consent to a search of her home in order to conceal her son's whereabouts.

We conclude that the deputies did not have probable cause

19

to arrest Freeman for Hindering Apprehension.  The deputies' first argument — that Freeman could have been trying to alert Kevin to the presence of the police — simply rings hollow. Before Freeman emerged from her house, the officers had already knocked on Kevin's mobile home door, called Kevin's telephone, and talked to Sheila, who was inside Freeman's house, on Kevin's cordless phone about his whereabouts.  If Kevin had been inside Freeman's house at the time, he surely would have been aware that the police were present.  Under these circumstances, it is implausible to suggest that a reasonable officer would think that Freeman exited the house and yelled at the deputies in order to inform someone back inside the house that the police were present.

Moreover, Freeman's refusal to consent to a warrantless search of her home cannot itself provide probable cause to arrest her for hindering apprehension. See Fletcher v. Town of Clinton, 196 F.3d 41, 54 (1st Cir. 1999) (noting that refusal to consent to warrantless search cannot justify arrest for hindering apprehension); see also 1 Wayne R. LaFave, Substantive Criminal Law § 3.5(d), at 235 (2d ed. 2003) ("[T]he failure to permit another to intrude upon your constitutional right against unreasonable searches may not be made

20

criminal."). Accordingly, the deputies did not have probable cause to arrest Freeman for Hindering Apprehension on the summary judgment facts found by the district court.

**C. Was the Deputies' Conduct Objectively Unreasonable in Light of Clearly Established Law?**

We next consider whether the deputies' conduct was objectively unreasonable in light of clearly established law at the time of their actions. Because qualified immunity protects officers who "reasonably but mistakenly" violate a plaintiff's constitutional rights, the deputies are entitled to qualified immunity if a reasonable person in their position "would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law." Goodson, 202 F.3d at 736.[8] Thus, our task is to determine whether reasonable officers in the deputies' position could have believed that probable cause existed to arrest Freeman.

No reasonable officer could have believed that there was probable cause to arrest Freeman. As we noted above, Texas

---

[8]Although both the probable cause inquiry above and this second prong of the qualified immunity inquiry are framed in terms of how a "reasonable person" would act, our finding that the deputies did not have probable cause to arrest Freeman does not foreclose the possibility that they might be entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 203 (2001); Anderson v. Creighton, 483 U.S. 635, 643 (1987).

Penal Code Ann. § 38.15, Interference with Public Duties, clearly and plainly excepts from the reach of the statute conduct that "consist[s] of speech only." Viewing the facts found by the district court in the light most favorable to Freeman, her actions clearly fall within the speech exception to the statute, and, as a result, no reasonable officer would believe that there was probable cause to arrest Freeman for Interference with Public Duties.[9] Further, as previously explained, no reasonable officer would believe that there was probable cause to arrest Freeman for the offense of Hindering Apprehension. The deputies' argument that they could reasonably have thought that Freeman came outside and

---

[9]We recognize that this court and others have previously found summary judgment appropriate on qualified immunity grounds in cases involving Texas Penal Code Ann. § 38.15. See Haggerty v. Texas Southern University, 391 F.3d 653, 657 (5th Cir. 2004) (qualified immunity appropriate where plaintiff's actions, including repeatedly approaching officer who was restraining another individual despite several orders to stand back, could have "stir[red] up [a] potentially explosive situation"); Huang v. Harris County, 264 F.3d 1141, at *7 (5th Cir. 2001) (unpublished) (holding that it was not unreasonable for officer to believe that he had probable cause to arrest plaintiff for Interference with Public Duties where plaintiff physically blocked the officer's access to her son (who was suspected of a minor offense) by closing a security gate that stood between the officer and her son); see also Hunter v. City of Electra, No. 7:03-CV-153-R, 2006 WL 1814150, at *5 (N.D. Tex. June 29, 2006) (officer entitled to qualified immunity based on arrest for Interference with Public Duties where plaintiff/bystander was arrested after "noisily brandishing a firearm" and disregarding repeated warnings to back away from the scene). This case is, of course, distinguishable from each of those cases, because Freeman's actions, as described by the district court, consisted of speech only.

22

confronted the officers as a way of warning her son Kevin, inside the house, of impending discovery, is simply too strained and counterintuitive to accept on these facts. Finally, any reasonable officer would recognize that, under clearly established law, Freeman's refusal to consent to a warrantless search of her home could neither itself justify an arrest nor create probable cause to arrest Freeman for another offense.  See, e.g., Steagald, 451 U.S. at 213-14; Fletcher, 196 F.3d at 54; 1 LaFave, supra, § 3.5(d), at 235. Accordingly, we conclude that no reasonable officer would have believed that there was probable cause to arrest Freeman, and we therefore affirm the district court's decision to deny summary judgment on Freeman's wrongful arrest claim.

## V.  Freeman's Excessive Force Claim

To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  Tarver, 410 F.3d at 751; Goodson, 202 F.3d at 740.  The district court denied the deputies' motion for summary judgment on the excessive force claim because it found that there was an issue of material fact based on Freeman's allegations that the

23

deputies twisted her arms behind her back while handcuffing her, "jerked her all over the carport," and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms.

Even accepting all of these facts as true, Freeman's excessive force claim fails. To state a claim for excessive use of force, the plaintiff's asserted injury must be more than de minimis. See Glenn, 242 F.3d at 314. The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is "directly related to the amount of force that is constitutionally permissible under the circumstances." Ikerd v. Blair, 101 F.3d 430, 435 (5th Cir. 1996); see Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999) ("In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed."). That the deputies' arrest of Freeman was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive. Rather, Freeman's excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest

24

itself was justified. See, e.g., Cortez v. McCauley, 478 F.3d 1108, ----, at *13 (10th Cir. 2007) (en banc) ("[I]n a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force."); Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir. 2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."); cf. Bodine v. Warwick, 72 F.3d 393, 400 n.10 (3d Cir. 1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention.").

In this case, the most substantial injury claimed by Freeman is that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested. This court has previously held, however, that minor, incidental injuries that occur in connection with the use of

25

handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force. See Glenn, 242 F.3d at 314 (stating that "handcuffing too tightly, without more, does not amount to excessive force"); see also Tarver, 410 F.3d at 751-52 (quoting Glenn). Nor was it excessive force for the deputies to leave Freeman in the patrol car for, as she alleges, 30 to 45 minutes. See Glenn, 242 F.3d at 314 (holding that seizure was not made unreasonable by fact that plaintiff was left in unventilated vehicle for approximately 30 minutes, despite plaintiff's allegation that "her multiple sclerosis was exacerbated by the heat"). The district court therefore erred in denying the deputies' motion for summary judgment on Freeman's excessive force claim.

## VI. Conclusion

For the reasons stated above, we AFFIRM the district court's order denying the deputies' motion for summary judgment on Freeman's unlawful arrest claim, and we REVERSE the district court's order denying the deputies' motion for summary judgment on Freeman's excessive force claim.