# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 14, 2009

Charles R. Fulbruge III
Clerk

No. 09-40518
Summary Calendar

WHITNEY GUILLORY,

Plaintiff–Appellee

v.

CARROLL THOMAS, Superintendent,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:07-CV-163

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Dr. Carrol Thomas, superintendent of the Beaumont Independent School District ("BISD") has filed an interlocutory appeal of the district court's denial of qualified immunity. We AFFIRM.

## FACTUAL & PROCEDURAL HISTORY

In January 2000, BISD hired Ferguson Parker as a band director at Ozen High School ("OHS") in Beaumont, Texas. The following fall, Whitney Guillory

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

began her freshman year at OHS and was a member of the band. Later, during the same school year, Parker was indicted for exposing himself to a 13 year-old middle school student, having sexual intercourse with a 15 year-old middle school student, and having sexual intercourse with a 16 year-old OHS student (collectively, the "2001 Allegations").

BISD conducted its own formal investigation.[1] As a result of this investigation, the BISD Board of Trustees voted to suspend Parker.

Parker subsequently was tried and acquitted on the criminal charges related to the 2001 Allegations. BISD offered to rehire Parker as the band director.[2] Upon his rehiring, Superintendent Thomas met with Parker to discuss the conditions of his reinstatement. They included not having students alone in his office, not closing his office door, not touching or hugging students, and monthly or bimonthly observations of Parker by Dr. Thomas.

Even prior to being rehired, Parker began to have sexual relations with Guillory. After returning to his former position as OHS band director, Parker and Guillory sought to conceal their relationship, which continued through 2004. On occasion, Parker and Guillory left campus during school hours to have sexual

---

[1]    Guillory was one of the students interviewed as part of the investigation. She denied having experienced or having witnessed any sexual misconduct by Parker.

[2]    The district court noted that the record is not clear on exactly what Parker's status was with BISD between the time he was initially suspended and the time he went back to work. However, the district court concluded that "[t]he record is fairly clear that in either event, Parker did not have a contract with BISD — and BISD had no obligation to make him the Ozen band director again — when he was acquitted of the 2001 Allegations." The district court also explained that "the Court's ultimate conclusions here would be the same whether Parker resigned his position or was simply suspended while charges on the 2001 Allegations were pending."

intercourse. On December 14, 2004, Guillory's mother discovered a nearly-naked Parker hiding in Guillory's bedroom closet.

Hours later, Guillory and her parents, Clarence and Tonya Piper, met with Dr. Thomas and BISD's attorney Melody Chappell. There is a factual dispute concerning what was said during this meeting. Guillory and her parents claim Dr. Thomas tried to convince them to keep quiet about the incident by explaining that "the media will make a black man [Parker] look bad."[3] They also claim that when Chappell arrived and Dr. Thomas told her "it's Parker again," Chappell began to make such comments to Dr. Thomas as "I told you so," and "I knew it would happen again." Guillory and her parents contend that Chappell's and Dr. Thomas's exchange made it clear that Chappell had advised Dr. Thomas and other BISD officials not to rehire Parker after his acquittal, but that her advice had been disregarded. BISD and Dr. Thomas deny that these comments were made or that Chappell gave any such advice when Parker was rehired.

Guillory filed a civil suit against BISD, Dr. Thomas, and Parker. The only claim relevant here is Guillory's Section 1983 claim for violating her right to bodily integrity asserted against Dr. Thomas in his individual capacity. *See* 42 U.S.C. § 1983.

Dr. Thomas moved for summary judgment on the basis of qualified immunity. In response, Guillory argued that Dr. Thomas was not entitled to qualified immunity because he acted with deliberate indifference towards her constitutional rights by rehiring Parker without adequate supervision or restrictions despite having actual notice that Parker posed a threat to Guillory. In addition, Guillory accused Dr. Thomas of later "turning a blind eye" towards

---

[3]    Dr. Thomas, Parker, Guillory, and the Pipers are all African-American.

Parker's actual sexual abuse of Guillory.[4] In support of this latter claim, Guillory notes that Parker was able to take her off school grounds during school hours to abuse her.

The district court held that Dr. Thomas was not entitled to qualified immunity. The analysis was this: (1) Guillory alleged a clearly established constitutional right – the right to bodily integrity; (2) a genuine fact issue exists concerning whether Dr. Thomas knew of a pattern of inappropriate sexual conduct by Parker that pointed plainly toward a conclusion that Parker had been sexually abusing students; (3) a genuine fact issue exists concerning Dr. Thomas's course of conduct; (4) a genuine fact issue exists concerning whether Dr. Thomas acted with deliberate indifference; and (5) a genuine fact issue exists concerning whether Dr. Thomas's course of conduct caused a violation of Guillory's constitutional rights.

## DISCUSSION

A.    *Jurisdiction*

Guillory challenges our jurisdiction to hear this interlocutory appeal.

Generally, we have jurisdiction only over appeals of "final decisions" of the district court. *See* 28 U.S.C. § 1291. However, we have limited jurisdiction over an interlocutory appeal of a denial of summary judgment where the basis for

---

[4]    Guillory does not allege that Dr. Thomas had actual notice that Parker was sexually abusing Guillory. Rather, she alleges that at the time the 2001 Allegations were made, and before Parker's sexual abuse of Guillory began, Dr. Thomas and BISD received reports that Parker was directing inordinate attention towards Guillory. Since she was questioned as part of BISD's internal investigation of the 2001 Allegations, Guillory claims that Dr. Thomas "essentially concedes that he was on actual notice that Parker posed a threat of sexually abusing Guillory."

denial was qualified immunity. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

We may review on an interlocutory appeal a district court's "purely legal question" of whether the official's conduct was "objectively unreasonable in light of clearly established law." *Id.* at 347. We may not review, though, a finding that a "genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Id.* at 346. Finally, and straddling the legal and factual divide, "the materiality of any factual dispute" is susceptible to review, but not the genuineness of the dispute. *Id.* at 347-48.

Accordingly, there is jurisdiction today to review for error in the district court's "assessing the legal significance of the conduct the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348. In making this assessment, Guillory's version of the facts is accepted as true. *Id.* We review *de novo* the district court's conclusions concerning the materiality of the facts. *Id.* at 349.

B.    *Liability*

Although this appeal solely concerns qualified immunity, we briefly note the circumstances under which a school supervisor can be liable for an employee's sexual abuse of a student. Dr. Thomas may be subject to liability if there is evidence accepted as true of the following:

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) (en banc). If Dr. Thomas is entitled to qualified immunity, though, the suit is to be dismissed. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that qualified immunity is an immunity from suit rather than a defense to liability).

C.    *Qualified Immunity*

A student is claiming that a supervisory official at her school is liable under Section 1983 for an employee's sexual abuse. We review the application of qualified immunity to such facts.

The doctrine of qualified immunity provides protection to government officials who are engaged in discretionary functions. They will "generally" be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, we apply a two-step analysis to determine whether a defendant is entitled to qualified immunity. First, viewing the evidence in a light most favorable to the plaintiff, we determine if the defendant's conduct violated the plaintiff's constitutional rights. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). If so, then we assess "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411.

For the purposes of the qualified immunity test, a constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (citations

omitted). In addition, an official's conduct is considered objectively reasonable "unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution." *Id.* However, an official's conduct is ordinarily not objectively reasonable if it violates a clearly established right, because "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

In order to determine if Dr. Thomas is entitled to qualified immunity, we first assess whether the facts alleged, taken in a light most favorable to Guillory, demonstrate that Dr. Thomas's conduct violated a clearly established constitutional right. *Gates*, 537 F.3d at 418. It is important to remember that it is Dr. Thomas's conduct that is at issue here. In her amended complaint, Guillory alleges that Dr. Thomas acted with deliberate indifference by rehiring Parker despite contrary legal advice and without any restrictions, safeguards, or adequate supervision. She claims that Dr. Thomas's actions and inactions were a proximate cause of her sexual abuse by Parker.

Schoolchildren "have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and . . . physical sexual abuse by a school employee violates that right." *Taylor Indep. Sch. Dist.*, 15 F.3d at 445. This constitutional right was clearly established during all times relevant to this case. *Id.* A school supervisor, such as Dr. Thomas, can be liable for an employee's violation of a student's right to bodily integrity if the supervisory failures that resulted in the sexual abuse "manifest a deliberate indifference to the constitutional rights of that child." *Id.* This legal principle was also clearly established at all times relevant to this case. *Id.*

7

There is little or no dispute that the sexual activity occurred, but the district court found a genuine issue of material fact regarding whether Dr. Thomas's conduct was a constitutional violation. Specifically, the district court found genuine fact issues concerning Dr. Thomas's knowledge of Parker's abuse of schoolchildren regardless of his acquittal on criminal charges. The district court described this alleged knowledge as one "of a pattern of inappropriate sexual conduct by Parker that pointed plainly toward a conclusion that Parker had been sexually abusing students."[5] The district court also found genuine fact issues concerning whether Dr. Thomas acted with deliberate indifference to the constitutional rights of Guillory and other OHS students, and whether Dr. Thomas's conduct caused Parker's violation of Guillory's constitutional rights.

We lack jurisdiction to analyze whether a reasonable view of the evidence would find the factual dispute genuine, but we have authority to decide if such a dispute would be material. *Kinney*, 367 F.3d at 346. We conclude that the dispute is material. Whether Dr. Thomas had knowledge of a pattern of conduct, was deliberately indifferent to it, and the indifference caused the violation, are material facts. The district court did not err in determining that Guillory had alleged a violation of a clearly established constitutional right.

We now turn to whether Dr. Thomas's conduct was objectively reasonable. *Gates*, 537 F.3d at 419. We have already discussed that an official's conduct is ordinarily not objectively reasonable if it violates a clearly established right,

---

[5] There do not appear to be factual findings concerning whether Dr. Thomas knew that Parker was specifically abusing Guillory. However, Guillory argues that Dr. Thomas knew or should have known that Parker was "grooming" her for sexual abuse when BISD conducted its internal investigation into the 2001 Allegations.

because "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

Viewing the evidence in a light most favorable to Guillory, she has sufficiently alleged that Dr. Thomas's conduct violated her clearly established constitutional right to bodily integrity, a right any reasonably competent school official would have recognized. Therefore, Dr. Thomas's alleged conduct, if proved true, was not objectively reasonable.[6] *Id*.

We conclude that the district court applied the proper test for determining whether Dr. Parker is entitled to qualified immunity. We also hold that the factual disputes identified in the district court's opinion are material. Therefore, Dr. Thomas is not as a matter of law entitled to qualified immunity.

We AFFIRM and REMAND for further proceedings.

---

[6] If a defendant pleaded that extraordinary circumstances existed and can prove that he "neither knew nor should have known of the relevant legal standard," then the defendant may be entitled to qualified immunity despite violating a clearly established law. *Harlow*, 457 U.S. at 819. However, this does not appear to be the case here.