PER CURIAM: *
Richard Rynearson brought this Bivens action against two border patrol agents in their individual capacities. He alleged they violated his Fourth Amendment rights by unlawfully detaining him. The district court granted summary judgment for the agents after concluding that they were entitled to qualified immunity. We AFFIRM.
FACTUAL AND PROCEDURAL BACKGROUND
Rynearson, a major in the United States Air Force, was stopped at a fixed interior *303 immigration checkpoint in Uvalde County, Texas approximately 67 miles from the United States-Mexico border in March 2010. He alleges that he has had several unpleasant experiences in prior stops at the checkpoint. Consequently, he was prepared with numerous cameras in his vehicle to record this stop. The following facts come from the pleadings and a video Rynearson recorded during the stop and posted on at least two websites. The defendants included the video as an exhibit in their Motion to Dismiss.
When Rynearson entered the checkpoint he was asked if he owned his vehicle. Upon saying he did, he was asked to move to the secondary inspection area. He was not asked about his citizenship at any point during the initial stop. Rynearson kept his window almost completely closed throughout all communications with the officers despite being repeatedly asked to open it further or step out of the vehicle. Rynearson was held in his vehicle in the secondary inspection area for a little over a minute before he was asked to display his identification. Inside the car, he stuck his driver’s license and military identification between the window glass and the door’s weather stripping, where they could be read from the outside of the vehicle.
Upon seeing Rynearson’s military identification, Agent Lands asked him where he was stationed. The agent then asked him to step out of the car. Rynearson refused and demanded to be told why he was being detained. Agent Lands explained that he needed to determine Ryn-earson’s citizenship and that he would be free to go afterwards, but Rynearson still refused to step out of the car or roll down his window. Rynearson insisted that he would not get out unless Lands explained his reasonable suspicions for detaining him. This discussion continued for about eight minutes before Agent Lands said he was going to find a supervisor. Rynearson then added his passports to the display of documents on his window.
• After Rynearson had waited 18 minutes at the checkpoint, Supervisory Border Patrol Agent Perez arrived. Rynearson explained to Agent Perez that the agents had not allowed him to leave despite the fact that he had offered his identification and told them that he was a citizen. Rynear-son still refused to roll down his window or exit the vehicle. Agent Perez asked for Rynearson’s passports and for the name of Rynearson’s commanding officer. Rynear-son refused to give the name and complained that Agent Perez was trying to interfere with his employment. Agent Perez then took Rynearson’s passports into the checkpoint station and returned 13 minutes later to inform Rynearson that he was free to go. He explained that if Ryn-earson would be more cooperative in the future by rolling down his window to help agents hear over the traffic and by physically producing immigration documents for validation, the checkpoint procedure would be quicker. Rynearson’s total time at the checkpoint was approximately 34 minutes.
Rynearson submitted an administrative claim to United States Customs and Border Protection pursuant to the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 2671 et seq., seeking $500,000 in damages as a result of the stop. His claim was denied. He then filed this suit in the United States District Court for the Western District of Texas. His FTCA claims were based on negligence, false arrest and imprisonment, intentional infliction of emotional distress, and violation of rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. His complaint also included Bivens claims, against Agents Lands and Perez for violation of his Fourth Amendment rights. See Bivens v. Six Unknown Named Agents of Fed. Bu *304 reau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Only the Bivens Fourth Amendment claims are before this court. All others were dismissed and no appeal was taken.
The district court concluded that Agents Lands and Perez were entitled to qualified immunity because Rynearson failed to demonstrate a violation of his Fourth Amendment rights in either the manner of conduct at the stop or the duration of the stop. The court also found that the agents had reasonable suspicion to detain Rynear-son. Finally, the district court denied Rynearson’s motion to stay summary judgment pending discovery.
DISCUSSION
We review de novo a district court’s grant of summary judgment on the basis of qualified immunity. Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007). “The doctrine of qualified immunity protects governmental officials ‘from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The plaintiff has the burden of refuting a properly raised qualified immunity defense “by establishing that the official’s allegedly wrongful conduct -violated clearly established law.” Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008) (quotations and citation omitted). “Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.” Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (quotations and citations omitted).
We conduct a two-step analysis to determine whether an agent is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The usual approach is to determine, first, “whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiffs constitutional rights.” Freeman, 483 F.3d at 410. If such a -violation occurred, we then “consider whether the defendant’s actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.” Id. at 411. For a right to be cléarly established, “existing precedent must have placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). Although the existence of the right is often considered first, it is permissible to begin with the determination of whether the claimed right was clearly established: “the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.” Pearson, 555 U.S. at 242, 129 S.Ct. 808.
A routine interior immigration checkpoint stop conducted without reasonable suspicion does not violate the Fourth Amendment. United States v. Martinez-Fuerte, 428 U.S. 543, 561-62, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Border patrol agents at interior checkpoints may stop a vehicle, refer it to a secondary inspection area, request production of documents from the vehicle’s occupants, and question the occupants about their citizenship. Id. at 562-63, 96 S.Ct. 3074. The purpose of the stop is limited to ascertaining the occupants’ citizenship status. United States v. Machuca-Barrera, 261 F.3d 425, 433 (5th Cir.2001). “The permis *305 sible duration of an immigrant checkpoint stop is therefore the time reasonably necessary to determine the citizenship status of the persons stopped.” Id. “Conversely, when officers detain travelers after the legitimate justification for a stop has ended, the continued detention is unreasonable.” United States v. Portillo-Aguirre, 311 F.3d 647, 654 (5th Cir.2002). Rynear-son argues the agents violated his Fourth Amendment rights by being “intentionally dilatory” in waiting too long to ask about his citizenship, intentionally extending the duration of his detainment, and calling his military 5 base to inquire into his military status. He argues that he had a right to refuse to cooperate because the Fourth Amendment “does not impose obligations on the citizen” to cooperate. See Hiibel v. Sixth Judicial Dist. Ct. of Nev., 542 U.S. 177, 187, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).
Rynearson relies on precedent discussing the Supreme Court’s analysis in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Terry allows a law enforcement officer to detain a person for a brief investigation if the officer can identify specific and articulable facts leading to a reasonable suspicion that the person is committing or about to commit a crime. United States v. Hill, 752 F.3d 1029, 1033 (5th Cir.2014). In contrast, the Supreme Court has granted agents at immigration checkpoints the right to stop and question a vehicle’s occupants regarding their citizenship without reasonable suspicion of any wrongdoing. Machuca-Barrera, 261 F.3d at 433. That grant of authority is readily distinguishable from the authority granted by Terry.
There is no dispute that the initial stop was constitutional. Neither Rynearson nor his car was searched. Because the Supreme Court has granted agents the authority to stop, question, and inspect documents at interior checkpoints, the government argues there must also be a requirement that the individual cooperate with the agents. The Supreme Court has concluded that “all that is required of the vehicle’s occupants is a response to a brief question or two and possibly the production of a document evidencing a right to be in the United States.” United States v. Brignoni-Ponce, 422 U.S. 873, 880, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (quotations and citation omitted).
The facts indicate that Rynearson generally asserted his right against unlawful searches and seizures while the agents had difficulty determining how to respond to his unorthodox tactics. We have not discovered nor been shown any authority supporting Rynearson’s claim that the constitutional rights he chose to stand on were clearly established. Accordingly, we conclude that these governmental officials, at worst, made reasonable but mistaken judgments when presented with an unusually uncooperative person, unusual at least in the facts described in any of the caselaw.
Because we hold that no constitutional right of which all reasonable officers would have known was violated, we need not consider whether Rynearson actually had some limited Fourth Amendment right to refuse to cooperate. See Pearson, 555 U.S. at 242, 129 S.Ct. 808,
We close by examining Rynearson’s argument that the district court erred by denying his motion to stay summary judgment pending limited discovery. “We review a decision to stay discovery pending resolution of a dispositive motion for an abuse of discretion.” Brazos Valley Coal. for Life, Inc. v. City of Bryan, Tex., 421 F.3d 314, 327 (5th Cir.2005). We find no basis to disturb the district court’s exercise of discretion. Qualified immunity “is intended to give government officials a right not merely to avoid standing trial, but also *306 to avoid the burdens of such pretrial matters as discovery....” McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir.2002) (citation and internal quotations omitted). To stay summary judgment in order to allow discovery, the court must determine “that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity.” Wicks v. Miss. State Emp’t Servs., 41 F.3d 991, 994 (5th Cir.1995). Then, if the court remains “unable to rule on the immunity defense without further clarification of the facts,” it may issue a discovery order “narrowly tailored to uncover only those facts needed to rule on the immunity claim....” Lion Boulos v. Wilson, 834 F.2d 504, 507-08 (5th Cir.1987). We have already discussed why the officers were entitled to qualified immunity in the absence of any clearly established constitutional right. Discovery was unnecessary.
AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.