United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the Fifth Circuit

No. 03-41291

CHARLIE SIMMONS and CHARLOTTE HANDLEY, on Their Own Behalf And As Next Friends for Their Children Dustin Handley, A Minor and Angelica Handley, A Minor,

Plaintiffs-Appellees,

VERSUS

CITY OF PARIS, TEXAS, et al.,

Defendants,

BILL McFADDEN; SHANE STONE; LEIGH FOREMAN; TOMMY MOORE; RHONDA GUSTIN, MATT BIRCH; DEWAYNE KILE, CHRIS BROOKS,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, PRADO and PICKERING, Circuit Judges,

CHARLES W. PICKERING, SR., Circuit Judge:

Bill McFadden, Shane Stone, Leigh Foreman, Tommy Moore, DeWayne Kyle, Rhonda Gustin, and Matt Birch, who are police officers employed by the City of Paris, Texas, along with Chris Brooks, a Deputy Sheriff of Lamar Country, Texas (collectively the "defendants"), appeal the district court's interlocutory order which partially denied their motion for summary judgment based on qualified immunity. The district court found that the defendants were entitled to

qualified immunity on the plaintiffs' claims against the defendants for their mistaken entry into the plaintiffs' house, but the court denied summary judgment on the plaintiffs' claims arising from the defendants' alleged failure to immediately terminate their search when the defendants realized they were in the wrong house.[1]  Since we agree that material issues of fact prevent granting summary judgment to McFadden, Stone, Foreman, Moore, Kyle, and Brooks on the narrow issue of whether the defendants reasonably terminated their search immediately after learning that they were in the wrong house, we affirm the district court as to those defendants.  However, with respect to defendants Gustin and Birch, no factual dispute exists as to whether they engaged in conduct that could subject them to liability.  Accordingly, as to these two defendants, we reverse the district court's denial of summary judgment and remand the proceeding for their dismissal.

## I.

Charlie Simmons, Charlotte Handley, and their two children Dustin and Angelica Handley, filed suit against the law enforcement defendants for their actions in mistakenly executing a "no knock" search warrant on the plaintiffs' home on June 29, 2002.  The search warrant was for 400 N.W. 14th Street.  Plaintiffs were residents of 410 N.W. 14th Street.

The basic facts are these:  On June 29, 2002, as part of a broader drug interdiction effort, Deputy Sheriff Brooks and Officer Shane Stone obtained a "no knock" warrant to search the home of a suspected drug dealer residing at 400 N.W. 14th Street.  Upon receiving the warrant, Brooks and Stone assembled the other defendants into a search warrant execution team to

---

[1] Plaintiffs allege factual disputes as to a number of issues, but the district court's factual and legal rulings against the plaintiffs are not before the Court.  The only issue subject to an interlocutory appeal and before this Court is the issue of whether or not the district court erred in denying in part defendants' motion for qualified immunity.

conduct the search. According to the plan devised by Officer McFadden, the officers would be divided into two teams: an "entry team" and a "perimeter team." The entry team's job was to enter the target residence and detain the occupants. The perimeter team's job was to secure the grounds in front of and behind the house to prevent any occupants from fleeing. The plan called for the officers to approach the house from the south in two vehicles: a pick-up truck and a squad car. The officers were to park their vehicles at the property immediately to the south of 400 N.W. 14th Street. There, the members of the entry team were to assemble into a single-file line to approach and enter the residence at 400 N.W. 14th Street.

Instead of stopping one house to the south of 400 N.W. 14th Street, Officer Birch, the driver of the warrant team's pick-up truck, stopped the car directly in front of 400 N.W. 14th Street. This caused Officer McFadden, the entry team leader, to confuse 410 N.W. 14th Street, the home of the plaintiffs which is immediately north of where Birch stopped the pick-up, with the home of the suspected drug dealer.

When the entry team members assembled into a single file line, two of the plaintiffs, Charlotte and Dustin Handley, were on their front porch. Seeing Ms. Handley and her son on the front porch, Officer McFadden sprinted toward them, and the rest of the entry team followed. Charlotte and Dustin, not realizing who the officers were, quickly retreated back inside their home. Officer McFadden followed Ms. Handley into her house through the still open front door. He immediately detained Ms. Handley and Mr. Simmons in the front room. The other members of the entry team followed Officer McFadden into the house and detained the children, Dustin and Angelica, either in Angelica's bedroom or the kitchen.

The officers quickly realized they were in the wrong home. In fact, at least two of the officers behind Officer McFadden knew that they were approaching the wrong house, but they thought perhaps Officer McFadden had seen the suspected drug dealer run into the Handley home and that he was in pursuit. The district court found that there were factual disputes as to how long the officers remained in the Handleys' house and whether the officers continued searching the residence after they knew it was the wrong house. Based on this finding of factual disputes, the district court denied the defendants' motion for summary judgment for qualified immunity on the sole issue of whether the law enforcement officers remained in the Handley home for an unreasonable period of time after they discovered they were in the wrong house. It is from this interlocutory order partially denying their motion from summary judgment that the defendants now appeal.

## II.

Under well-settled principles of law, a government official's entitlement to qualified immunity is evaluated under a two-step analysis. First, the court determines whether the plaintiffs allege a violation of a constitutional right. See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). Second, if a constitutional violation is alleged, the court determines whether the conduct at issue was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. Id.

On an appeal of an interlocutory order denying a claim of qualified immunity, our review is unusually circumscribed. A party whose claim of qualified immunity is denied is entitled to interlocutory review only to the extent that the denial turns on an issue of law. Mitchell v. Forsyth, 472 U.S. 511 (1985). We cannot, at this stage, review the district court's determination

4

that genuine material factual disputes exist. As this Court has explained, "we can review the materiality of any factual disputes, but not their genuineness.'" Kinney v. Weaver, 367 F.3d 337, 347 (5th Cir. 2004) (en banc) (quoting Wagner v. Bay City, 227 F.3d 316, 320 (5th Cir. 2000)). Due to this restriction, the only question that we can answer on interlocutory appeal is whether or not "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." Id. at 346. We cannot proceed further by examining whether "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." Id. Thus, our inquiry here is whether, accepting the dispute of facts identified by the district court, the district court correctly identified a course of conduct in which the defendants may have engaged that would be objectively unreasonable in light of clearly established law.

In Maryland v. Garrison, 480 U.S. 79, 88 (1987), the Supreme Court held that police officers do not necessarily violate the Fourth Amendment when they mistakenly execute a search warrant on the wrong address. However, the Court noted that, "as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they . . . were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant." See id. at 1018. Based upon Garrison and the holdings of several of our sister circuits,[2] the district court identified the clearly established constitutional rule that, when law

---

[2] In addition to Garrison, the district court relied upon Pray v. City of Sandusky, 49 F.3d 1154, 1159 (6th Cir. 1995); Liston v. County of Riverside, 120 F.3d 965, 978 (9th Cir. 1997), and Baker v. Monroe Township, 50 F.3d 1186, 1192 (3d Cir. 1995). In Pray, the Sixth Circuit identified a clearly established Fourth Amendment rule that "officers were obligated to retreat as soon as they knew or reasonably should have known that there was a mistake, i.e., they were in the wrong residence." 49 F.3d at 1159. In Liston, the Ninth Circuit recognized the clearly established Fourth Amendment norm that "[a] detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involved an undue invasion of privacy," and that the norm is violated when a detention is prolonged beyond the point at which "a reasonable officer could not reasonably have believed that further detention

5

enforcement officers are executing a search warrant and discover that they have entered the wrong residence, they should immediately terminate their search. Because defendants do not contest that this qualifies as a clearly established constitutional norm, we can assume, and so hold, that it qualifies and proceed to the question of whether there is conflicting evidence that this constitutional rule was violated.

The defendants make two arguments that they did not violate the plaintiffs' constitutional rights: first, the defendants argue that the members of the entry team departed from the Handleys' home immediately upon discovering that it was the wrong house; and, second, they aver that the plaintiffs failed to establish a constitutional violation because they fail to allege an injury. The defendants' primary argument is that they departed from the Handleys' home immediately upon discovering that they were in the wrong house. This argument cannot prevail on this appeal, however, because it would require the Court to weigh evidence and review the district court's factual determinations. The defendants testified that they became aware that they had entered the wrong house immediately upon, or immediately after, entering the plaintiffs' residence. In contrast, plaintiff Charlotte Handley testified that the officers remained in the house for five to six minutes. Plaintiffs further testified that even after the police realized they were in the wrong house, they searched Simmons and Handley's bedroom. The district court found that this incompatible testimony created a genuine dispute of material fact as to how long the officers remained in the house after discovering that they had entered the wrong house and detained the wrong individuals. On this interlocutory appeal this Court lacks jurisdiction to entertain the

was proper." 120 F.3d at 978 (internal quotation marks omitted from first quotation). In Baker, the Court articulated the clear principle that "the reasonableness of the detention [depends on] whether the police were diligent in accomplishing the purpose of the stop as rapidly as possible." 50 F.3d at 1192.

defendants' argument that Charlotte Handley's testimony is not credible. Thus, we are precluded from accepting the defendants' arguments that they left "immediately."

The defendants' second argument is that the plaintiffs fail to allege a constitutional violation because they failed to show that they suffered any injury. However, the defendants acknowledge that this argument arises from this Court's jurisprudence regarding excessive force claims under the Fourth Amendment. They cite no authority establishing an injury requirement to unreasonable search and seizure claims outside of the realm of excessive force claims. The argument has no application to the plaintiffs' unreasonable search and seizure claims because the only injury necessary to sustain those claims are the unreasonable searches and seizures themselves. See, e.g., Crowder v. Sinyard, 884 F.2d 804, 825 (5th Cir. 1989) (requiring on a § 1983 claim that plaintiffs show only that the search and seizure occurred and was unreasonable within the meaning of the Fourth Amendment but not requiring a showing of injury); cert. denied, 496 U.S. 924 (1990), overruled on other grounds, Horton v. California, 496 U.S. 128 (1990). Here, there is no doubt that the plaintiffs' home was searched and their persons seized. Graham v. Conner, 490 U.S. 386, 395 n.10 (1989) (stating that seizure occurs when government actors "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen") (ellipsis in original) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); Illinois v. Andreas, 463 U.S. 765, 771 (1983) (a search is a government inspection that intrudes upon a person's reasonable expectation of privacy). Thus, the plaintiffs have alleged violations of their constitutional rights.

Defendants argue that they made an honest mistake in going into the Handley home and that they accordingly are entitled to qualified immunity. If the evidence was undisputed that this

7

was all that occurred, defendants would be correct, and they would be entitled to qualified immunity. However, plaintiffs offered evidence that defendants did not immediately depart after learning that they were in the wrong house. That is an issue to be resolved by a jury. Qualified immunity does not provide a safe harbor for police to remain in a residence after they are aware that they have entered the wrong residence by mistake. A decision by law enforcement officers to remain in a residence after they realize they are in the wrong house crosses the line between a reasonable mistake and affirmative misconduct that traditionally sets the boundaries of qualified immunity.

In Pray v. City of Sandusky, 49 F.3d 1154 (6th Cir. 1995), a case with closely analogous facts, the Sixth Circuit accepted this principle. There, the police mistakenly broke down the door and raided the wrong suite in a duplex. Id. at 1156-57. The evidence revealed that the police discovered their mistake and exited the residence within four to five minutes. Id. at 1160. Nevertheless, the Sixth Circuit held that the qualified immunity defense could not be sustained as a matter of law in the presence of the plaintiffs' testimony that "despite knowing that they were in the wrong place, the defendants nevertheless 'secured' the Pray residence for an additional four to five minutes." Id. In the presence of such testimony, the court ruled that it was "for the trier of fact to determine, based on the credibility of the evidence before it, at what point the officers knew or reasonably should have known they were at the wrong residence, and to determine what searches and seizures occurred after that." Id. In accord with Pray is the Ninth Circuit's decision in Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir. 1997) (finding "'triable issues' regarding the reasonableness of the detention, particularly as to whether it continued after the officers knew or a reasonable officer would have known that a serious mistake had been made").

8

We deem the principle enunciated by these two circuits to be the correct one for this case. The district court found genuine disputes of material fact regarding the conduct of the defendants after they discovered that they had mistakenly entered the Handleys' home. On this appeal, we lack jurisdiction to second-guess the district court's evaluation of the evidence. We are called upon only to determine whether the district court correctly identified a course of conduct in which the defendants may have engaged that would subject the defendants to liability. We hold that it did. Accordingly, the district court's denial of summary judgment as to the defendants who entered the Handleys' house is affirmed.

## III.

In denying the defendants' motion for summary judgment, the district court did not distinguish between the defendants who entered the Handleys' home and those defendants who indisputably did not. At oral argument, plaintiffs' counsel conceded that there was no evidence indicating that either Officer Gustin or Officer Birch entered the Handleys' residence. Based upon this concession, neither of these defendants can be held liable under the theory that they unreasonably remained in the Handleys' home.[3] As this was the sole basis upon which the district court denied summary judgment to these two defendants, the district court's denial of summary judgment to Officers Gustin and Birch must be reversed and the claims against defendants Gustin and Birch dismissed.

## IV.

---

[3] The plaintiffs contend that Birch and Gustin can be held liable as bystanders. They cite a Fourth Circuit opinion providing for bystander liability upon proof that an alleged bystander (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act. See Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002). Accepting arguendo the alternative theory of bystander liability, the claim must fail because the plaintiffs offered absolutely no evidence to support any of the three factual requirements.

For the above reasons, we reverse the district court's denial of summary judgment as to Officers Gustin and Birch, and affirm the district court's denial of summary judgment as to the officers who entered the Handleys' residence. We remand the case for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.