IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-40809
Summary Calendar

DAVID ROGERS; KATHRYN ROGERS

Plaintiffs-Appellants

v.

MATT HOOPER; MIKE TAYLOR; JACE ANGLIN; CHRIS HILL

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
5:06-CV-165

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiffs David Rogers and Kathryn Rogers appeal the district court's grant of summary judgment in favor of Defendants Mike Taylor, Jace Anglin, and Chris Hill. The Plaintiffs also appeal the grant of partial summary judgment to Defendant Matt Hooper. Finding no error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTS

This case arises from the Defendants' mistaken execution of a search warrant on Plaintiffs' home. The Defendants are all members of either the Sulphur Springs Special Response Team or the Red River Valley Drug Task Force. All were involved with executing the warrant. Defendants Hooper and Taylor were part of an undercover investigation in which confidential informants purchased drugs at 131 Russell Drive in Sulphur Springs, Texas. They arranged two drug purchases at the residence. The second occurred on the day they obtained the search warrant for the residence. After this purchase, the confidential informant told Taylor and Hooper that he saw a large amount of drugs inside the house.[1] As a result of the information acquired during the investigation, Defendants Hooper and Taylor obtained a search warrant for a "single family white frame home facing east. The residence is municipally known as 131 Russell St. . . ." Because Hooper and Taylor were familiar with the area, they were selected to guide the team serving the warrant.

On the night the warrant was executed, Hooper and Taylor drove by the house in preparation for later serving the warrant. During this surveillance, Hooper and Taylor noticed a small maroon vehicle parked in front of 131 Russell Drive. This car appeared to be the suspect's car that they had previously observed parked at that address. Hooper and Taylor returned and briefed the members of the team executing the warrant about the location of the home, and developed a plan for executing the warrant.

Because the suspect at 131 Russell Drive was known to carry a weapon and to be dangerous, the raid was conducted in a no-knock fashion at night. The plan called for Hooper and Taylor to lead the team; Hooper would drive and

---

[1] The record is unclear what time of day these drug transactions took place. The transaction on the date the warrant was obtained, however, would have occurred prior to 9:00 p.m., the time that members of the search team were assembled.

Taylor would ride with him. Their vehicle would park in front of 131 Russell Drive. That act would identify to the remaining members of the team the location of the proper house to search. Hooper chose to approach the residence from a different direction than they had previously used in order to use a tree line for cover as they approached. As Hooper and Taylor went down Russell Drive, they passed the tree line. Hooper saw what he thought was the vehicle they had seen parked in front of 131 Russell Drive during their earlier surveillance. Hooper said that he relied on the location of this vehicle to cue him as to the proper house.

However, the car was not parked in front of 131 Russell Drive, but instead in front of the Plaintiffs' residence located next door at 127 Russell Drive. Taylor testified that after exiting the vehicle, he immediately realized that it was the wrong address because the Plaintiffs' house did not have a bay window as did the target house. Hooper stated that he also immediately realized they were at the wrong house upon leaving the vehicle. Taylor called out to stop the entry team, but it was too late – others had already entered the Plaintiffs' home.

During the raid, Defendant Anglin broke through the Plaintiffs' front door with a door ram. The Plaintiffs, who were in bed asleep at the time, were awakened by the sound of police entering their bedroom. They were handcuffed. After realizing they were at the wrong residence, the officers removed the handcuffs from the Plaintiffs, apologized, and left.[2]

The Plaintiffs subsequently filed this Section 1983 suit, alleging that the Defendants' actions violated their right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United

---

[2] Members of the Task Force returned later and repaired the damage to the Plaintiffs' home that occurred as a result of the forced entry.

States Constitution.[3] See 42 U.S.C. § 1983. The Defendants filed motions for summary judgment which asserted a qualified immunity. The district court granted summary judgment in favor of each Defendant, except Matt Hooper. The court found no disputed issue regarding Hooper except as to whether he had remained in the plaintiffs' house for an unreasonable length of time after learning of the error. A trial was held as to that issue, resulting in a jury verdict for Hooper. There is no appellate issue arising from the trial.

## DISCUSSION

This Court reviews a district court's grant of summary judgment de novo, engaging in the same evaluation of the evidence as did the district court. XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd., 513 F.3d 146, 149 (5th Cir. 2008). Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Our sole question is whether the district court properly held that the Defendants were entitled to immunity.

Public officials have a qualified immunity "not only from liability, but also from defending against a lawsuit." Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 620 (5th Cir. 1992). The purpose of the immunity is to prevent "distraction of officials from their government duties, inhibition of discretionary action, and deterrence of able people from public service." Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). The question is whether a reasonable officer could have believed, even if mistakenly, that the conduct at issue was lawful. Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000) (law enforcement officers have immunity when they "reasonably but mistakenly" commit a

---

[3] Plaintiffs sued a number of individuals involved in the service of the search warrant who are not parties to this appeal. The Plaintiffs settled with these individuals after mediation. All references to "Defendants" in this opinion refer only to those Defendants who are parties to this appeal.

constitutional violation).  Officers who make reasonable mistakes have immunity; "the plainly incompetent or those who knowingly violate the law" do not.  Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).  However, if a plaintiff (1) alleges a violation of a constitutional right; and (2) demonstrates that the official's conduct was objectively unreasonable in light of clearly established law at the time of the conduct, the qualified immunity defense fails.  Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  The question of whether an official's conduct is objectively unreasonable is a question of law to be determined by the court. Magieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994).

The Plaintiffs unquestionably demonstrated the violation of a constitutional right.  The Defendants did not have a warrant or any other constitutionally sufficient justification for entering the Plaintiffs' home.

The district court accepted that a constitutional right was violated but rejected that the Defendants' actions were objectively unreasonable.  On appeal Plaintiffs argue that unreasonableness is shown by these facts: (1) the Plaintiffs' home was brown or beige while the proper house was white with green trim; (2) Plaintiffs' house had a large tree in the front yard while the proper house did not; (3) Plaintiffs' house had a covered front porch while the proper house did not; and (4) both houses had marked house numbers.  Plaintiffs also allege that the fact that Taylor and Hooper had been at the correct house at least twice before and that the address listed in the search warrant was accurate are facts that weigh against the grant of qualified immunity to the Defendants.

In determining whether qualified immunity was appropriately found here, we examine a recent precedent involving similar facts.  Simmons v. City of Paris, Texas, 378 F.3d 476 (5th Cir. 2004).  Officers were attempting to serve a search warrant at the home of a suspected drug dealer whose address was correctly shown on the warrant.  Id. at 478.  After obtaining the warrant, the

officers met with members of the team that would go to the home. The plan was for the officer in the lead vehicle to park at the property immediately south of the home, and that act would alert the entry team to serve the warrant on the house immediately to the north. Id. Instead, the lead vehicles stopped directly in front of the residence that was to be searched. This caused the entry team to enter the Plaintiffs' house that was the next one north. The Plaintiff and her son were on the front porch of their home and retreated inside when they saw the entry team sprinting toward them. Id. After the officers detained the Plaintiffs, they realized they had entered the wrong house. Id. Summary judgment was proper for all officers who entered the home due to this mistake and then had departed immediately upon discovering their error. Id. at 480-81.

The Simmons court discussed with approval Pray v. City of Sandusky, 49 F.3d 1154 (6th Cir. 1995). In Pray, officers obtained a warrant for the upper level of a duplex, but mistakenly sought to execute the warrant on the lower level of the duplex. The Plaintiffs, an elderly couple, lived in the lower half of the duplex, and brought suit for the mistaken entry. Id. at 1156. Almost identically to our case, the Pray district court granted summary judgment to the officers on the basis of the initial mistaken entry, but denied summary judgment on the question of whether the officers remained in the home too long after the mistaken entry was discovered. The Sixth Circuit affirmed:

> We agree that a reasonable officer in the defendants' position could have believed that he was initially entering the correct residence described on the warrant. Police officers are regularly forced to make critical decisions under extreme pressure--decisions which seem much easier after facts have unfolded and time for reflection has been afforded. Given the circumstances at the time of entry, it appears that the officers had to make a quick judgment in what was initially a tense situation. At the time the officers entered the Pray home, it was dark, vision was poor, and any delay could have been potentially detrimental to an arrest of [the suspect] and seizure of evidence.

Id. at 1159 (internal citations and quotations omitted).

Plaintiffs find an Eleventh Circuit precedent to be more applicable. Hartsfield v. Lemacks, 50 F.3d 950 (11th Cir. 1995). There, officers executed a search warrant on the wrong house. The officer who obtained the warrant and led the search warrant team had been to the home on the day before the search, and had the warrant in his possession. However, he did not check the warrant again to see that he was leading the team to the proper address. Id. at 955. Determinative to the court was that the officer leading the team did not take "any precautionary measures" to ensure that he was leading the team to the right house. Id. Additional indications of the unreasonableness of the error was that execution of the warrant was during daylight hours; the numbers on the homes were clearly marked; the homes were on different parts of the street; and the homes were separated by at least one house. Id. The court held that the officer did nothing to avoid the mistaken execution, that the mistaken entry would have been avoided by simply checking the address on the warrant, and there was no reasonable justification for failing to do so. Id. The court concluded that "searching the wrong residence when [the officer] had done nothing to make sure he was searching the house described in the warrant," did not constitute "reasonable effort" on the part of the officers.

In the present case, Taylor and Hooper made an initial surveillance of the house shortly before the warrant was executed, though they increased the chance for mistake by approaching the house in the opposite direction than they would use later. The relevant houses were next door to each other. Despite differences in appearance, those differences were less noticeable at night. It is also true that because the search was to occur at night, the chance for a mistake was greater and the need for precautions proportionately were increased.

Finally, a car that earlier had been thought to be in front of the house to be searched was instead in front of the Plaintiffs' home when the search began.

Before these facts can be said to block qualified immunity for these officers, they must not be "consistent with a reasonable effort to ascertain and identify the place intended to be searched." Id. at 955 (quoting Maryland v. Garrison, 480 U.S. 72, 87 (1987)). Evaluating the Plaintiffs' claims in light of Simmons and Pray, the district court found qualified immunity for Taylor and Hooper based on the mistaken entry into the Plaintiffs' home. The key to us is that the officers made reasonable efforts, though obviously insufficient ones, to identify the correct house. We agree they were entitled to qualified immunity.

We are sympathetic to the Plaintiffs, as what happened here must have been an intensely frightening event for those who believed they were in the safety of their own home. The intrusion caused by an unannounced, no-knock entry into a home in the middle of the night is substantial, no matter how quickly the mistake is noted and leave is taken.

However, the doctrine of qualified immunity balances the "vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties." Davis v. Scherer, 468 U.S. 183, 195 (1984). The limited question that we answer in this appeal is whether Defendants Taylor and Hooper were objectively unreasonable in the manner that they led the team. No one has alleged that the Defendants intentionally entered the wrong home. Neither do we find, despite the significance of the error to the Plaintiffs and the ease that hindsight provides in determining how this mistake could have been avoided, that the Defendants were incompetent. Gibson, 44 F.3d at 277.

The district court correctly found that Taylor and Hooper did not act in an objectively unreasonable manner. The Plaintiffs make a derivative argument that supposed error in granting Hooper qualified immunity for leading the search team to the wrong house infected the trial on whether Hooper remained

in the Plaintiffs' home too long after learning of the team's mistake. The jury returned a verdict in favor of Hooper, and no separate error is alleged to have occurred at trial. Because the summary judgment was properly entered, there was no error from that judgment to contaminate the trial.

The two remaining Defendants, Hill and Anglin, did not direct the search team. Anglin rammed open the door to the Plaintiffs' home, and Hill handcuffed Plaintiff David Rogers. This Court has held that "when law enforcement officers are executing a search warrant and discover that they have entered the wrong residence, they should immediately terminate their search." Simmons, 378 F.3d at 479-80. The Plaintiffs presented no evidence supporting that either Anglin or Hill failed in their duty of immediate termination of a search upon learning of the mistake. The record instead shows that Anglin had already left and Hill was exiting the residence when it was learned that the warrant was served on the wrong residence.

Accordingly, we AFFIRM the summary judgments entered on the basis of qualified immunity.