IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2008

Charles R. Fulbruge III
Clerk

No. 08-40491

RAYBON HUNT; ANNIE HUNT,

Plaintiffs-Appellees

v.

PAUL TOMPLAIT, Jasper County Deputy Sheriff;
TODD HUNTER,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont
USDC No. 1:07-CV-52

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

This suit, brought under 42 U.S.C. § 1983, stems from the warrantless search of the residence of Appellees Raybon and Annie Hunt. Because Appellants Todd Hunter, Jasper Chief of Police, and Paul Tomplait, Jasper County Deputy Sheriff, failed to read or consult a search warrant which authorized the search of a different residence, they erroneously led a search of Appellees' home. Appellants appeal the district court's denial of summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judgment on the grounds of qualified immunity. We affirm the district court's order holding that Appellants are not entitled to qualified immunity.

I.

The following facts were recounted by the district court:

On September 26, 2006,[1] members of the Houston Police Department contacted the Jasper Police Department in Jasper, Texas, to request assistance in apprehending Edward Hunt, Jr. ("Hunt, Jr."), who had allegedly exchanged gunfire with Houston police and attempted to run over a uniformed officer with his vehicle. Hunt, Jr., was believed to have fled the Houston area in a white El Camino driven by his cousin, Terell Williams. Information obtained from the mother of Williams's child and a tracking device in Williams's cellular telephone monitored by United States Deputy Marshal Steve Lohenstein, indicated to Houston police that the men were traveling to a home located at 126 Circle Drive in Brookeland, Texas.[2] This residence was later discovered to be owned by Hunt, Jr.'s father, Edward Hunt, Sr. ("Hunt, Sr."). A warrant was later issued for this residence.

That afternoon, Houston police began arriving at the Jasper police station. In anticipation of the Houston officers' obtaining a search warrant, Appellant Todd Hunter ("Chief Hunter"), the Jasper Chief of Police, directed Detective Paul Noyola to conduct initial surveillance of the Browndell area of Brookeland. Chief Hunter instructed Noyola to look for a white El Camino driven by a young, African-American male, matching the description of Hunt Jr.'s cousin. Chief Hunter also contacted Appellant Paul Tomplait ("Deputy Tomplait"), a Jasper

---

[1] The Appellants state that the incident occurred on September 28, 2006, but the district court stated that the incident occurred on September 26, 2006. The identification of the correct date is immaterial to the issues in this appeal.

[2] Brookeland is outside of Jasper, but is within Jasper County's jurisdiction.

County Deputy Sheriff, to request assistance in locating a home which Deputy Tomplait claims Chief Hunter described to him as "the Hunt residence."

At Chief Hunter's direction, Deputy Tomplait took several members of the Jasper Police Department into a briefing room where he drew a diagram on a dry erase board depicting the approximate location of Appellees' home at 940 Church Street in Brookeland. Deputy Tomplait knew that members of the Hunt family resided at that location because he had been there on a previous occasion in an attempt to arrest Appellees' son, Marcus Hunt. According to Deputy Tomplait, although he took no steps to determine whether any other Hunts lived in the Browndell community, he believed that 940 Church Street was the only Hunt residence in the area.[3]

After the initial briefing, Chief Hunter instructed Deputy Tomplait, Noyola, and another officer to establish a staging area several miles from Appellees' home and await further orders. Lohenstein, Chief Hunter, Jasper Police Officer Derek Woods, and other members of the Jasper and Houston Police Departments eventually met Deputy Tomplait and Noyola at the site. At least one of the Houston officers had in his possession a valid warrant authorizing police to enter and search a residence at 126 Circle Drive in Brookeland, which was described in the warrant as "a trailer/mobile home that is red in color" with "some unpainted lattice work." Appellees' home was dark brown and was not located at 126 Circle Drive. According to Appellees, "940" was painted on a large post in front of their home, which would have been easily visible when a light was shined on it. Neither Chief Hunter nor Deputy Tomplait read the search warrant or inquired about its contents. Matters proceeded quickly when Lohenstein announced that he had recently received a transmission from Williams's cellular telephone. Lohenstein showed Deputy

---

[3] Appellees note there are a number of related persons living in the area with the last name Hunt, including Raybon's brother and other relatives.

Tomplait the computer screen that he was using to track the transmission and asked if the flashing icon corresponded with the location where the suspect was believed to be located. Deputy Tomplait could only confirm that the signal might be within 100 yards of Appellees' home.

At approximately 8:30 p.m. or 9:30 p.m., Chief Hunter approached Deputy Tomplait and instructed him to lead the assembled officers to the search location. Following Deputy Tomplait's lead, the search team arrived at Appellees' home with their lights off in order to avoid alerting the occupants of their approach. Once at the residence, Deputy Tomplait, who was then charged with securing the road, shined his spotlight on the home. Woods went to the back of the residence to cover the rear exit, while Chief Hunter and other members of the search team knocked on the front door and announced themselves as police. When there was no response, the search team broke down the front door and entered Appellees' home. At the back of the house, Woods encountered Appellees attempting to exit through the rear door and ordered them at gunpoint to get down on the ground.

While other officers searched Appellees' home for Hunt, Jr., Chief Hunter approached Appellee Raybon Hunt, placed his knee in his back, and searched him for any weapons. After determining that Hunt had no weapons on his person, Chief Hunter allowed Officer Derek Woods to put his weapon away and assist Annie Hunt into a nearby chair. Woods then left the room while Chief Hunter questioned Raybon Hunt, who was still lying on the floor. Hunt was not allowed to get off the ground until another officer informed Chief Hunter that the search team had completed their search but had not found Hunt, Jr., on the premises. At that point, Raybon Hunt asked if he could retrieve his driver's license, which was in the pocket of a pair of pants hanging on the wall. After viewing Hunt's license, Chief Hunter realized that he and his team were in the wrong home. He immediately ordered all officers to exit Appellees' residence.

Following this incident, Appellees Raybon and Annie Hunt filed their complaint in district court on January 25, 2007, against Chief Hunter, Deputy Tomplait, and Jasper Police Officer Derek Woods, among others, asserting claims arising under the Civil Rights Acts of 1871, 42 U.S.C. § 1983. In January 2008, Appellees agreed to drops charges against all defendants other than Chief Hunter, Deputy Tomplait, and Woods. Deputy Tomplait, Chief Hunter, and Woods filed motions for summary judgment shortly thereafter, asserting the defense of qualified immunity. After hearing the summary judgment motions on the merits, the district court entered orders denying Deputy Tomplait and Chief Hunter summary judgment on the basis of qualified immunity and dismissing Woods from the case. Appellants Deputy Tomplait and Chief Hunter appeal from that ruling.

II.

Before addressing the merits of this case, we must address this Court's jurisdiction to hear this appeal. The denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our jurisdiction to review the denial is limited only to questions of law. Behrens v. Pelletier, 516 U.S. 299, 313 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision.'"(citation omitted)); see also Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007); Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251 (5th Cir. 2005). The district court's finding that genuine factual disputes exist is a factual determination that we may not review in this interlocutory appeal, but the district court's finding that a particular

dispute is material is a legal determination that we may review. Meadours, 483 F.3d at 422 ("[W]e may only review the district court's conclusion that issues of fact are material (a legal question), but we may not review the conclusion that those issues of fact are genuine (a fact question).").

"Whenever the district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." Kinney v. Weaver, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). "First, the district court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law. Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." Id. "According to the Supreme Court, as well as our own precedents, we lack jurisdiction to review conclusions of the second type on interlocutory appeal." Id. "We do, however, have jurisdiction to the review the first type of determination, the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law." Id. at 347. Therefore, here we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that Appellants are not entitled to qualified immunity on the given set of facts that the district court found sufficiently supported in the summary judgment record. Id.

## III.

This Court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity. Freeman v. Gore, 483 F.3d 404, 410 (5th Cir. 2007) (noting that "our review of the legal significance of the facts is de novo" (citation omitted)). But, as explained above, in an interlocutory appeal we lack the power to review the district court's decision that a genuine factual dispute exists and thus we consider only whether the district court erred in assessing the legal significance of the conduct that the

district court deemed sufficiently supported for purposes of summary judgment. Kinney, 367 F.3d at 348. Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true. Id.

IV.

In determining whether a defendant is entitled to summary judgment on the basis of qualified immunity, this Court applies a two-step analysis. First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008) (citing Freeman, 483 F.3d at 410). If we find such a violation, we then consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. Id. Each of these legal determinations can be reviewed on appeal.

Here the district court determined that Appellants Chief Hunter and Deputy Tomplait violated Appellees' Fourth Amendment rights by participating in a warrantless search of their home. Hunt v. Hunter, 2008 WL 2036703, *8 (E.D. Tex. 2008). The law of this Circuit states that "[w]arrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search." United States v. Gomez-Moreno, 479 F.3d 350, 354 (5th Cir. 2007); see also Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Although such searches are presumptively unreasonable, law enforcement officers are generally granted qualified immunity if the evidence is undisputed that they merely made an honest mistake when entering the incorrect home. Simmons v. City of Paris, 378 F.3d 476, 479–80 (5th Cir. 2004). An honest mistake can only be clearly established if the officers' conduct is "consistent with a reasonable effort to ascertain and identify the place

to be searched." Maryland v. Garrison, 480 U.S. 79, 88 (1987). It is undisputed that there was no search warrant issued for Appellees' home.

Deputy Tomplait argues that he could not have violated the Hunts' Fourth Amendment rights because he did not enter the Hunt home and his role in the search was not sufficient to establish a violation of the Appellees' rights.[4] Appellees do not contend that Deputy Tomplait entered their home during the warrantless search, nor was this controlling in the view of the district court. The district court outlined Deputy Tomplait's actions, observing that before the search Tomplait had been told to identify the "Hunt residence." The court stated that Deputy Tomplait "took several members of the Jasper Police Department into a briefing room where he drew a diagram on a dry erase board depicting the approximate location of Plaintiffs' home at 940 Church Street in Brookeland," and when shown the computer used to track the transmission of Williams' cell phone, "Tomplait could only confirm that the signal might be within 100 yards of Plaintiffs' home if one traveled through the woods." Hunt, 2008 WL 2036703 at *1. The district court further observed that:

> Hunter approached Tomplait and instructed him to lead the assembled officers to the search location. Following Tomplait's lead, the search team arrived at Plaintiffs' home with their lights off in order to avoid alerting the occupants of their approach. Once at the residence, Tomplait, who was then charged with securing the road, shined his spotlight on the home.

Id. at *2.

The district court held that even though Deputy Tomplait had not entered the home, his actions violated the Hunts' constitutional rights because as an

---

[4] We do not have jurisdiction to address Deputy Tomplait's factual disputes concerning his role in the search of the Hunt residence. Viewing the evidence in the light most favorable to the plaintiff, we will review only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported by the evidence for purposes of summary judgment. Kinney, 367 F.3d at 348.

officer responsible for leading the search team to the correct location, Deputy Tomplait had an obligation to consult the warrant to verify that the home identified in the warrant was, in fact, the residence with which he was familiar. Id. at *8. The district court relied on the holding in Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1027 (9th Cir. 2002), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551 (2004). In that case, the Ninth Circuit found that certain officers who "plan and lead" a search are responsible for ensuring that they have lawful authority for their actions. Id. The court went on to say that:

> A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.

Id. (citing United States v. Leon, 468 U.S. 897, 922–23 (1984)). The reasoning in Ramirez is persuasive. Deputy Tomplait was not a mere bystander in the execution of the search warrant.[5] He actively led the search team at Chief Hunter's request to the only "Hunt residence" that he was aware of, without reading the search warrant or pursuing additional information about the residence described in the search warrant. The fact that Deputy Tomplait did not enter the house does not relieve him of liability as a matter of law; his identification of the Hunt residence as the residence to be searched—and subsequent leadership of the search team to the residence—was a direct cause of the Fourth Amendment violation. See Reimer v. Smith, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983

---

[5] Deputy Tomplait attempts to classify himself as a "line officer," the type of officer who the Ramirez court stated was not responsible for reading the warrant because they were merely following the instructions of the search leader. Ramirez, 298 F.3d at 1028. However, Deputy Tomplait was not merely following the instructions of his superiors, according to the facts as stated by the district court.

9

action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.")[6] The law of this Circuit clearly establishes that searches of the wrong residence are presumptive constitutional violations. Because Deputy Tomplait took the lead in identifying the residence without inquiring beyond the name of the family that lived there, he cannot contend that he did not effectuate the violation because he did not physically enter the incorrect residence.

Both Deputy Tomplait and Chief Hunter also contend that the court erred in failing to find that their actions were objectively reasonable. Even if a warrantless search is executed, law enforcement officers are generally granted qualified immunity if the evidence is undisputed that they merely made an honest mistake when entering the incorrect home, meaning that their conduct was "consistent with a reasonable effort to ascertain and identify the place to be searched." Maryland v. Garrison, 480 U.S. 79, 88 (1987). Here the district court stated that some steps were taken to identify the residence, but concluded that they were insufficient to constitute a reasonable effort. The court stated that:

> Notwithstanding their failure to read the search warrant, Hunter and Tomplait made some feeble attempts to identify the correct search location. For example, before erroneously searching Plaintiffs' home, Hunter sent Noyola to conduct surveillance in the Browndell area and instructed Noyola to attempt to locate a white El Camino driven by a young, African-American male. Later, he dispatched other officers to monitor the location of the vehicle and to watch Plaintiffs' home. There is no indication, however, that any of these investigative efforts ever tied the vehicle in which Hunt, Jr., was believed to be traveling to 940 Church Street. At best, the

---

[6] Deputy Tomplait points out that this Court, in Simmons, held that two police officers who did not enter the home could not be held liable under § 1983 for failing to terminate their search as soon as they were put on notice of a risk that they might be in the wrong residence. Simmons, 378 F.3d at 479-80. Simmons is distinguishable because here it is undisputed that Appellants did not continue the search after discovering that they had entered the wrong residence. Appellants are alleged to have executed a warrantless search, not to have remained in the home after they were on notice that they were in the wrong residence.

surveillance conducted by various members of the Jasper Police Department merely indicated that Hunt, Jr., was in the Browndell area. According to the officers' depositions, the white El Camino was seen driving in the southbound lane of U.S. 69, at a residence on FM 1007, traveling down Church Street, and at a neighborhood convenience store. Noyola even observed the vehicle at 126 Circle Drive. No officer testified at deposition, however, that he saw a white El Camino at 940 Church Street.

Hunt, 2008 WL 2036703 at *9. There is no authority to suggest that these measures constitute a reasonable effort to ascertain the place to be searched, especially considering that none of the surveillance efforts supported a search of the Appellees' residence at 940 Church Street.[7] Appellants did not attempt to read the warrant or inquire about whether the address to which they were leading the search team was actually the address contained in the warrant. The cases cited by Appellants as excusing more "egregious" mistakes are distinguishable because, in those cases, the officer had ascertained the actual residence identified in the warrant at some point, but committed an honest error in identifying the residence at a later time. See, e.g., Rogers v. Hooper, No. 07-40809, 2008 WL 828955, at *4 (5th Cir. Mar. 27, 2008) (holding that officers who had originally ascertained the address of the residence to be searched, but later misidentified the residence because of the actual location of the suspects vehicle were entitled to qualified immunity). Contrary to the Appellants' assertion, reading the warrant is the most basic step an officer can take in ascertaining the place to be searched. Here, according to the undisputed facts, Appellants, leaders of the search team, did not even take that essential step in identifying the proper residence to be searched.

---

[7] We express no opinion about whether other facts may come to light that would relieve Appellants of liability at trial. We do not have jurisdiction to resolve factual disputes in this appeal.

The district court relied in part on the holding in the Eleventh Circuit case Hartsfield v. Lemacks, which presents a factual scenario similar to this case. 50 F.3d 950, 954-55 (11th Cir. 1995). In Hartsfield, an officer obtained a warrant to search a residence that he had personally visited. 50 F.3d at 955. However, the officer failed to reread the warrant to confirm that he was leading the search team to the correct location. Id. The court found that the resulting mistaken entry into the wrong home could have been avoided if the officer had simply checked the address on the warrant, and held that the officer was not entitled to qualified immunity, noting that the officer "had done nothing to make sure he was searching the house described in the warrant." Id.

Here, as stated by the district court, "Hunter and Tomplait never consulted the search warrant although even a cursory review would likely have averted the mistaken entry into Plaintiffs' home. " Hunt, 2008 WL 2036703 at *9. "Indeed, it is uncontroverted that Plaintiffs' home was not located on Circle Drive and did not match the description provided in the warrant." Id. In fact, Appellants' behavior is arguably even less reasonable than the behavior of the officer in Hartsfield, because that officer at least took the time to originally ascertain the correct address. Appellants' argument that Hartsfield is distinguishable because the search occurred during broad daylight—unlike this search which occurred during the night—is unconvincing. The fact that it was dark outside did not effect the warrantless search of Appellees' residence. Even if this search had occurred in broad daylight, Appellants would still have erroneously searched the wrong house, because they had already come to the conclusion—without consulting the warrant or inquiring anything beyond the surname of the family that resided there—that Appellees' residence at 940 Church Street was the residence to be searched.[8] The reasoning in Hartsfield is sound. The district

---

[8] In addition, Chief Hunter's argument that he need not read the warrant because it had been read by someone at the Houston Police Department is unpersuasive. We can only

court did not err in determining that the identified conduct of the Appellants does not satisfy the "objectively reasonable" standard and does not establish that the warrantless search of the Appellees' home was an honest mistake consistent with a reasonable effort to ascertain and identify the place to be searched.

V.

For the foregoing reasons, the district court's denial of summary judgment on the basis of qualified immunity is AFFIRMED.

---

review the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment. The district court stated only that Chief Hunter had identified the place to be searched as the "Hunt residence." We do not have jurisdiction to determine if any additional facts asserted by Chief Hunter would support a conclusion that he reasonably relied on the Houston Police Department. Nor do we believe that the holding here imposes an obligation on every officer to read the warrant. As the Ninth Circuit stated in Ramirez:

> What's reasonable for a particular officer depends on his role in the search. . . . The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.

Ramirez, 298 F.3d at 1027. Here, Chief Hunter, as both Chief of Police and planner and leader of the search at issue, had an obligation to read the warrant and to identify the residence beyond its designation as the "Hunt residence," which was obviously insufficient to accurately identify the place to be searched.