# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2026

Lyle W. Cayce
Clerk

No. 25-20360

———————————

Tyler Harrington,

*Plaintiff—Appellant*,

*versus*

James Lancaster; Nathaniel Cano; Jared Lindsay,

*Defendants—Appellees*.

———————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-366

———————————

Before Jones, Stewart, and Willett, *Circuit Judges*.

Per Curiam:[*]

This Fourth Amendment case began with a neighbor's mistake. The neighbor called 911 to report a possible home invasion but gave officers the wrong address. Acting on that information, officers entered the wrong home to conduct a protective sweep, expecting to find either a vacant house or an intruder. Instead, they found Tyler Harrington and his wife asleep in bed. The officers then wondered aloud whether they had the right address. But

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

instead of confirming where they were, they stepped back to the front door, knocked, and re-entered moments later. During that second entry, they awoke the underwear-clad couple, ordered them at gunpoint to put their hands up and "stay right there," and questioned them.

\* \* \*

The district court erred in dismissing Harrington's unlawful entry, search, and seizure claims arising from the officers' second entry. On the facts alleged, apparent consent justified the officers' initial entry and sweep—but not their return moments later. A warrantless entry may be valid when officers reasonably, though mistakenly, rely on consent to enter a home. *See Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990). The question is whether "the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises[.]" *Id.* at 188 (cleaned up).

The facts available at the time of the first entry support that conclusion. The officers knew that two 911 calls had reported a possible home invasion, that dispatch had identified Harrington's address as the home in question, and that dispatch had confirmed the owner's consent to clear what the officers believed was that house. Given those facts, a reasonable officer could conclude—though mistakenly—that he had consent to enter.

But the facts looked very different by the time the officers entered again. Just before the second entry, they opened a bedroom door and found the Harringtons asleep in bed. Officer Lindsay whispered, "There's somebody asleep on the bed. Did they give us the right address?" Officer Cano answered, "I don't know." At that point, the officers knew the house was not vacant, as they had expected, but occupied by a sleeping couple instead. And they knew enough to question whether they were in the right place. Yet rather than confirm the address before going further, they exited,

No. 25-20360

re-entered, and seized Harrington and his wife. Indeed, they did not confirm the address with dispatch until after they had re-entered the home, awakened the Harringtons, and questioned them at gunpoint. Apparent consent therefore did not justify the officers' second warrantless entry, search, and seizure.[1]

Qualified immunity does not change that conclusion. We have held that qualified immunity does not "provide a safe harbor for police to remain in a residence after they are aware that they have entered the wrong residence by mistake." *Simmons v. City of Paris*, 378 F.3d 476, 481 (5th Cir. 2004). Once the officers found the Harringtons asleep in bed and questioned whether they had the correct address, they had to "immediately terminate their search." *Id.* at 477. They did not. Qualified immunity therefore does not shield the officers from Harrington's unlawful-entry, search, and seizure claims arising from the second entry.

Harrington's excessive-force claim is different. That claim rests on the allegation that the officers "woke him up by screaming at him and holding him at gunpoint while he wore only underwear." But "pointing a gun can be reasonable given the circumstances" even when the plaintiff poses no immediate danger to the officers. *See Crane v. City of Arlington*, 50 F.4th 453, 468 (5th Cir. 2022). In *Crane*, we rejected an excessive-force claim where an officer pointed a gun and shouted orders at car passengers who were not suspects. *Id.* We have likewise held that "the momentary fear experienced by the plaintiff when a police officer pointed a gun at him [does] not rise to the level of a constitutional violation." *Id.* (cleaned up).

---

[1] We do not address Defendants' exigent-circumstances argument because they failed to raise it below. *See Est. of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 202 (5th Cir. 2018) ("This court will not consider arguments first raised on appeal . . . ." (footnote omitted)).

No. 25-20360

A right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation omitted). Harrington alleges no force beyond the officers' shouting commands and brandishing firearms responding to a late-night home-invasion call. On these allegations, we cannot say that every reasonable officer would have understood that conduct to violate clearly established law.

Accordingly, we AFFIRM the dismissal of the excessive-force claim and the unlawful-entry, search, and seizure claims arising from the initial entry; REVERSE the dismissal of the unlawful-entry, search, and seizure claims arising from the second entry; and REMAND for further proceedings.