# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30846

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2016

Lyle W. Cayce
Clerk

GINETTE BONE,

Plaintiff - Appellant

v.

KELLI DUNNAWAY, Police Officer; BRYAN JONES,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
U.S.D.C. No. 2:14-CV-2788

Before REAVLEY, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Ginette Bone appeals the district court's summary judgment for defendants, Officers Kelli Dunnaway and Bryan Jones, which granted them qualified immunity from Bone's claims of excessive force and false arrest under 42 U.S.C. § 1983. For the reasons set forth below, we AFFIRM as to Dunnaway and VACATE and REMAND as to Jones.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30846

I

The following facts are set forth in the light most favorable to Bone.  Bone was eating at a restaurant in the French Quarter of New Orleans, Louisiana around 10:00 p.m. on a Saturday night, December 14, 2013.  She and her dining companions noticed an SUV parked in the no-parking zone outside of the restaurant.  One of the passengers threw trash onto the sidewalk.  In response, Bone's companion approached the SUV and discussed what he witnessed with the passengers.  Bone then witnessed a passenger throw more trash onto the ground.  This time, Bone walked outside, picked up the trash, and placed it on the hood of the SUV.  One of the passengers got out of the SUV and confronted Bone.  An argument ensued, during which the driver of the SUV threatened to call the police.

Bone's companion flagged down Officer Dunnaway.  When Dunnaway arrived, the driver of the SUV began screaming at Dunnaway.  Officer Jones drove by, saw the encounter, and pulled over to assist Dunnaway.  During that time, Bone remained leaning against the nearby building until Dunnaway approached her and asked if she placed trash onto the SUV.  Bone told Dunnaway that she put trash that the passengers had thrown onto the ground on the hood of the SUV.  Bone then waited in Dunnaway's vehicle to stay warm until Dunnaway approached Bone and asked her to sign a summons to appear in court.  Bone refused to sign the summons, stated "I've done nothing wrong[;] you must be joking," and turned around to walk away.  Jones then "forcefully" grabbed Bone and "violently" slammed her face against a nearby window.  Neither Dunnaway nor Jones warned Bone that she could be arrested if she did not sign the summons.[1]

---

[1] As we discuss more fully below, Jones's version of these events is dramatically different.  He contends that Bone refused to sign the summons and started walking away, running into Jones as she did so.  Jones states that he advised her that she needed to stop or

No. 15-30846

The officers arrested Bone and took her to Orleans Parish Prison. Dunnaway cited Bone for disturbing the peace by tumultuous behavior in violation of section 54-403 of the New Orleans Municipal Code, and resisting an officer in violation of section 54-441. Bone was the only person arrested at the scene, although the passengers of the vehicle were also issued summonses for disturbing the peace and littering. Jones's force resulted in bruising around Bone's wrists, fingerprints on her arms, and a swollen cheek. Bone did not go to the doctor because she did not have medical insurance.

Bone filed claims under 42 U.S.C. § 1983, alleging that Jones and Dunnaway violated her Fourth Amendment rights. Bone alleged that Jones used excessive force and that Dunnaway falsely arrested her. Bone also filed several state law claims against Jones, Dunnaway, and the City of New Orleans. The district court granted summary judgment for Jones and Dunnaway, concluding that both defendants were entitled to qualified immunity. The district court dismissed Bone's state law claims, declining to exercise supplemental jurisdiction. Bone appeals the district court's grant of summary judgment, arguing that Jones and Dunnaway were not entitled to qualified immunity.

II

A

We review the grant of summary judgment de novo and apply the same standard as the district court. *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1492 (2015). "Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show 'that there is no genuine dispute as to any material

---

she would be arrested, and that she kept walking. He contends that it was only then that he grabbed Bone by the wrist, and that in doing so, he accidentally pushed her into a wall.

fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

Bone asserts claims of false arrest and excessive force under section 1983. "Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). A plaintiff can bring a claim under section 1983 against an officer in his or her individual or official capacity. *Id.* If, as in this case, a plaintiff sues a person in his or her individual capacity, the defendant may be protected by the doctrine of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A public official is entitled to qualified immunity unless his conduct violates constitutional law that was 'clearly established at the time of the defendant's actions.'" *Thompson*, 762 F.3d at 435 (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). A constitutional violation is clearly established if no reasonable officer could believe the act was lawful. *See Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009).

B

Bone claims that Dunnaway violated her Fourth Amendment right to be free from false arrest. The district court granted summary judgment for Dunnaway, concluding that she was entitled to qualified immunity because "Dunnaway was not objectively unreasonable in concluding that plaintiff committed or attempted to commit the offense of disturbing the peace by tumultuous behavior."

"The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Probable cause is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). The right to be free from false arrest without probable cause is clearly established. *See Club Retro*, 568 F.3d at 206. However, to overcome qualified immunity, Bone must show that no reasonable officer would have believed that there was probable cause to arrest Bone. *See id.* at 206–07; *Manis*, 585 F.3d at 846. Probable cause and the ensuing qualified immunity turn on Dunnaway's reasonable beliefs and knowledge, including information received from eye witnesses. *See Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 200 (5th Cir. 2015) (citing *United States v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007)).

Dunnaway arrested Bone for disturbing the peace by tumultuous behavior in violation of a New Orleans municipal ordinance that prohibits "act[ing] in a violent or tumultuous manner toward another whereby the property of any person is placed in danger of being destroyed or damaged." NEW ORLEANS, LA., MUN. CODE § 54-403(b)(7). The Municipal Code also makes it a criminal offense to attempt to violate a provision of the code. *See id.* § 54-61(a). At the time of the arrest, Dunnaway responded to an excited confrontation among strangers at 10 p.m. on a Saturday night in the French Quarter. Additionally, when she arrived on the scene, the driver of the SUV immediately screamed at Dunnaway. One passenger told Dunnaway that Bone had placed trash on the car, although the passenger and Bone gave conflicting stories regarding where the trash came from. Considering the

No. 15-30846

totality of the circumstances, it was reasonable for Dunnaway to believe that Bone either violated or attempted to violate section 54-503 when she interacted with the passengers of an unknown car by intentionally depositing trash on that vehicle's hood. As a result, the district court correctly held that Dunnaway was entitled to qualified immunity.

C

Bone also claims that Jones violated her Fourth Amendment right to be free from excessive force. A plaintiff must meet three elements to establish an excessive force claim: (1) the plaintiff suffered an injury, (2) the injury "resulted directly and only from the use of force that was excessive to the need," and (3) the force was objectively unreasonable. *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). The right to be free from excessive force is clearly established, but the degree of force that is reasonable varies based on the totality of the circumstances. *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). "'To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force,' paying 'careful attention to the facts and circumstances of each particular case.'" *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). The Supreme Court has instructed that courts determining the objective reasonableness of force must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury. *See*

6

*Freeman*, 483 F.3d at 416–17; *see also Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is therefore subjective—it is defined entirely by the context in which the injury arises."); *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) ("Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold . . . ." (footnote omitted)).[2]  At the very least, there is a fact question about the degree of injury.[3]  Therefore, we must determine the reasonableness of Jones's force.

To withstand Jones's motion for summary judgment, Bone must show that a genuine dispute of material fact exists as to whether: (1) Jones's use of force violated Bone's Fourth Amendment right to be free from excessive force; and (2) Jones's use of force was objectively unreasonable in light of then clearly established law.  *Newman v. Guedry*, 703 F.3d 757, 766 (5th Cir. 2012).

Jones does not make much of an attempt to meet the first prong, perhaps because, considering the evidence in the light most favorable to Bone, none of the *Graham* factors favors Jones in this case.  *See Graham*, 490 U.S. at 396.  Perhaps, also, Jones does not seek to justify Bone's version of events, because in his version, the "wrist grab" was to stop Bone from fleeing and the "slam" was accidental.  Bone's alleged crime was very minimal, and there is no evidence that she was a threat to the safety of others or even perceived as such.  *See id.*  Although the district court concluded that it was reasonable for Jones to believe Bone was "attempting to evade arrest by flight," this conclusion is

---

[2] This court has said that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."  *Freeman*, 483 F.3d at 417.  Bone has alleged injuries that resulted from conduct that exceeded the use of handcuffs.

[3] Thus, we need not address the extent to which the reasoning of *Wilkins v. Gaddy*, 559 U.S. 34 (2010), an Eighth Amendment case, may apply to a Fourth Amendment case.  *See United States v. Rodella*, 804 F.3d 1317, 1327–28 (10th Cir. 2015), *petition for cert. filed*, No. 15-1158 (U.S. Mar. 14, 2016).

based on Jones's version of the facts. Bone has shown a genuine dispute of fact as to both whether the officers were attempting to arrest her at the time she turned around and whether the refusal to sign and turning around constituted "flight."  Bone testified that she was not told she was under arrest before she turned away from the officers and that the "slam against the window" took place immediately after she turned away.  Considering the facts in the light most favorable to Bone, there is a genuine dispute of material fact as to whether Bone was evading arrest when Jones acted.  Hence, there is a genuine dispute as to whether any *Graham* factor justified Jones's use of force, and therefore, whether Jones's force violated Bone's constitutional rights.

Turning to the question of "clearly established law,"[4] this same factual dispute prevents us from answering the question in Jones's favor at summary judgment.  Given that this case does not involve a serious crime, any perception that the suspect posed a risk of injury to anyone, or any active physical "resistance," the only possible justification for the use of force was Jones's perception that Bone was "fleeing" at the time of the use of force (and his argument that the "slam" was accidental).  We have distinguished, for purposes of qualified immunity, cases in which officers face verbal resistance but no fleeing suspect, from those in which officers face some form of verbal or physical resistance *and* a fleeing suspect.  In the former cases, we have denied qualified immunity at the summary judgment stage.  *See Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (rejecting summary judgment on qualified immunity grounds where an individual was stopped for a minor traffic offense, did not attempt to flee, and did not engage in active resistance); *Bush v. Strain*,

---

[4] The burden is on Bone to show that it was clearly established at the time of her arrest that Jones's use of force was unconstitutional.  *See Club Retro*, 568 F.3d at 194 ("When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.").

513 F.3d 492, 502 (5th Cir. 2008) (rejecting qualified immunity where an individual was not resisting arrest or attempting to flee); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734, 740 (5th Cir. 2000) (finding a fact issue precluded summary judgment on qualified immunity grounds where officers tackled an individual who pulled his arm away during arrest attempt, but was not fleeing); *see also Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (rejecting qualified immunity where an individual was arrested for disorderly conduct, was not a threat to officers, and was not attempting to flee). In the latter cases, we have affirmed grants of qualified immunity. *See Pratt v. Harris Cty.*, 822 F.3d 174, 182–85 (5th Cir. 2016) (affirming grant of qualified immunity where suspect physically resisted officers' commands and initially attempted to flee); *Poole v. City of Shreveport*, 691 F.3d 624, 629, 631 & n.5 (5th Cir. 2012) (same); *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (same).

This distinction also drove the outcome for one plaintiff in *Tolan v. Cotton*, 573 F. App'x 330, 330 (5th Cir.) (no qualified immunity where officers shot suspect who was neither physically resisting officers nor attempting to flee), *on remand from* 134 S. Ct. 1861 (2014),[5] while resulting in a different outcome for his mother, *see Tolan v. Cotton*, 713 F.3d 299, 308 (5th Cir. 2013) (holding that officer's "grabbing [the plaintiff's] arm and shoving her against the garage door" after she refused to comply with verbal commands to facilitate a search was not unconstitutional under clearly established law), *vacated on other grounds*, 134 S. Ct. 1861 (2014), *aff'd in relevant part*, 573 F. App'x 330,

---

[5] The Supreme Court concluded that the Fifth Circuit improperly failed to credit the son's evidence and remanded for consideration of whether the officer's actions violated clearly established law. *Tolan*, 134 S. Ct. at 1868. On remand, the Fifth Circuit held that a genuine dispute of material fact existed that precluded qualified immunity at summary judgment for the son's excessive force claim. *Tolan*, 573 F. App'x at 330. His mother's claim was not considered by the Supreme Court.

331 (2014) ("It goes without saying that all other [than the son's] dismissals . . . are not affected by [the Supreme Court's] holding.").

A case directly on point is not required to show that it is clearly established that certain force is a constitutional violation; nonetheless, existing precedent must "define[ ] the contours of the right in question with a high degree of particularity." *Hogan*, 722 F.3d at 735 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)). These cases define parameters for officers like Jones. Under his version of the facts, Bone had resisted verbal commands to come back and submit to an arrest and was attempting to flee (and the "slam" was accidental), which is arguably within the parameters of the cases in which we have granted qualified immunity.[6] On the other hand, if Bone's version of the events is true, there was no verbal command that she stop, no arrest, and no flight, and Jones's degree of force was clearly prohibited under our precedent. Given this factual dispute, which turns on the credibility of Jones and Bone, we cannot resolve the qualified immunity question as a matter of law. Accordingly, we conclude that Jones is not entitled to summary judgment on qualified immunity grounds. *See Newman*, 703 F.3d at 766.

As a result of its ruling on Bone's federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims. We leave in place that action as to Dunnaway, but vacate and remand as to Jones so that the district court can examine anew the question of supplemental

---

[6] But to conclude that it was reasonable for Jones to believe Bone was evading arrest, the district court must have credited Jones's testimony that she walked twenty feet after she turned away and was told that "she needed to stop or she'd be arrested for failure to be issued a summons." Even when deciding the clearly established prong, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 134 S. Ct. at 1866.

jurisdiction over the state law claims in light of the pendency of this federal claim.

## III

In conclusion, we AFFIRM the district court's judgment as to Dunnaway. We VACATE the judgment in favor of Jones and REMAND to the district court for further proceedings consistent with this opinion.