# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 18, 2023

Lyle W. Cayce
Clerk

No. 21-60829

———

Isaac Pollard; Lisa Pollard; Ronnie Pollard,

*Plaintiffs—Appellants*,

*versus*

Thomas Campbell; Brandon Perkins; Jonathan Hendrix,

*Defendants—Appellees*.

———

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:19-CV-182

———

Before Stewart, Dennis and Higginson, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs-Appellants—Isaac, Lisa, and Ronnie Pollard—brought a 42 U.S.C. § 1983 action against three DeSoto County Sheriff's Department officers to recover damages for several alleged Fourth Amendment violations. The issue on appeal is whether the district court correctly determined, on summary judgment, that the deputies were entitled to qualified immunity from the Pollards' claims of unlawful detention,

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

excessive force, and warrantless entry into their home.  For the reasons that follow, we conclude the officers were entitled to qualified immunity from the claims of unlawful detention and excessive force and therefore AFFIRM the district court's summary judgment with regard to those claims. However, we find the district court erred by treating the movant-officers' factual contentions as true with regard to the warrantless-entry claim. Because the district court's analysis of that claim turned on its erroneous acceptance of the movants' factual contentions, we VACATE that part of its opinion and REMAND for proceedings consistent with this opinion.

## I. Background

Reciting the facts as asserted by the Plaintiffs, Isaac Pollard, who has autism, lives with his parents, Ronnie and Lisa Pollard, in Olive Branch, Mississippi.  On the night in question, Isaac went for a late-night run in his neighborhood and then retraced the route in his white pickup truck to confirm the mileage of his run.  While driving his route, Isaac was pulled over by Deputy Brandon Perkins.  Deputy Perkins questioned Isaac about why he was out late but then let him go.

That same night, another resident of the Pollards' neighborhood contacted the Desoto County Sheriff's Department about a possible car break-in.  The resident's car had been rummaged through, but nothing was missing. Before contacting the police, the resident had observed a male in a light-colored shirt and basketball shorts walking at a fast pace in the street. The resident also saw a white pickup truck pass by.  Separately, another neighbor called in a report of a "suspicious male" wearing light-colored clothing getting into a white pickup truck at the Pollard residence.

After receiving this information, Deputy Perkins went to the Pollard residence with another officer, Deputy Hendrix. Isaac answered the door and spoke with the deputies. What happened next is a point of contention. The

officers claim that Isaac requested to go back into the house to retrieve his cell phone, and that he consented to Officer Perkins accompanying him inside. The Pollards claim that Officer Perkins wanted to sit in the bed of Isaac's truck. When Isaac explained that the bed was locked and the keys were in the house, Officer Perkins told him to go get the keys. Isaac did so, at which point Officer Perkins followed him inside without his consent. It is undisputed that Officer Hendrix stood at the threshold when Perkins entered and that Perkins was inside for less than a minute before returning outside with Isaac.

By that time, another officer, Deputy Campbell, had arrived. The deputies began questioning Isaac about his activities that evening. Isaac became distraught and agitated, and the officers placed him in handcuffs. Isaac managed to make a phone call to his parents. Ronnie and Lisa joined the officers and Isaac outside, saw Isaac in handcuffs, and informed the officers that Isaac was autistic, so the handcuffs were distressing for him. Isaac remained in handcuffs for approximately an hour while he was questioned. He complained that his wrists hurt, and he received several mosquito bites. Isaac alleges that the deputies' actions, including the use of handcuffs, caused him severe emotional distress, and he has since been diagnosed with post-traumatic stress disorder.

Following these events, Isaac, Ronnie, and Lisa brought a § 1983 claim against, *inter alia*, Deputy Perkins, Deputy Hendrix, and Deputy Campbell, alleging that the officers unlawfully (1) detained Isaac; (2) used excessive force; and (3) entered Lisa and Ronnie's home without a warrant or consent, all in violation of the Fourth Amendment. The deputies moved for summary judgment, arguing that, as officials employed by the county, they were entitled to qualified immunity. The district court agreed and granted their motion for summary judgment. The Pollards timely appealed.

No. 21-60829

## II. Standard of Review

We review "a district court's grant of summary judgment de novo, applying the same standards as the trial court." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

However, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (internal quotation marks and citation omitted). In such cases, we draw all reasonable inferences in the nonmovant's favor, but "the burden shifts to the plaintiff to show that the defense [of qualified immunity] is not available." *Id.* Accordingly, the plaintiff "bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity." *Id.*

## III. Discussion

The Pollards' claims arise under 42 U.S.C. § 1983, which provides a private right of action to a person who has been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under the color of state law. However, qualified immunity "shields public officials sued in their individual capacities from liability for civil damages" so long as "their conduct does not violate clearly established statutory or constitutional rights." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (internal quotation marks and citation omitted).

The qualified-immunity analysis consists of two steps. The first inquiry is "whether the officer's alleged conduct has violated a federal right." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). The second

4

inquiry is "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* On the second prong, "[a]n officer is entitled to qualified immunity unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Linicomn v. Hill*, 902 F.3d 529, 538–39 (5th Cir. 2018) (internal quotation marks and citation omitted). The Supreme Court has made clear that this does not "require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37, 243 (2009). Within this framework, we address whether the district court erred in concluding that the deputies were entitled to qualified immunity on the Pollards' Fourth Amendment claims.

We start with Isaac's claim that the deputies unlawfully detained him. The Fourth Amendment guarantees the rights of individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment is concerned with ensuring that the scope of a given detention "is reasonable under the totality of the circumstances." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc). To be reasonable, a warrantless arrest must ordinarily be supported by probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam). However, officers "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To fall within this exception to the usual probable-cause requirement, an investigative detention "must be carefully tailored to its underlying justification." *Florida v.*

*Royer*, 460 U.S. 491, 498, 500 (1983). Whether a particular stop is reasonable depends on the facts of the case. *Id*. We consider the "information available to the officer[s] at the time of the decision to stop a person." *See Turner v. Lieutenant Driver*, 848 F.3d 678, 691 (5th Cir. 2017) (alteration in original) (quotation omitted).

The district court determined that the deputies were entitled to qualified immunity on this claim, and we agree. Even if we assume *arguendo* that the deputies violated Isaac's Fourth Amendment rights by detaining him without reasonable suspicion, we cannot say that the detention was objectively unreasonable in light of clearly established law. To satisfy this test, Isaac was required to demonstrate that "*every* reasonable official would understand that what he is doing violates" the law. *See id.* (quotation omitted). Isaac fails to make such a showing. Rather, an objectively reasonable individual in the deputies' position could have suspected that Isaac was responsible for the car break-ins. As we have noted, "qualified immunity turn[s] on [the deputies'] reasonable beliefs and knowledge, including information received from eye witnesses." *Bone v. Dunnaway*, 657 F. App'x 258, 261 (5th Cir. 2016) (per curiam) (unpublished). In detaining Isaac, the deputies relied on information relayed to them by the neighborhood residents. Isaac matched the physical description of the allegedly suspicious individual in front of the neighbor's house, he admitted to being out when the break-in occurred, and his white pickup truck—the same car reported by the neighbor—was seen nearby. We cannot say that, when viewed in light of the totality of the circumstances, the deputies' detention was objectively unreasonable, and Isaac fails to cite to controlling authority suggesting otherwise. Thus, we conclude the deputies are entitled to qualified immunity on this claim.

Next, we address Isaac's claim that the officers used excessive force. "To prevail on an excessive force claim, a plaintiff must show (1) an injury

that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Windham v. Harris Cnty.*, 875 F.3d 229, 242 (5th Cir. 2017) (internal quotation marks and citation omitted). The right to be free from excessive force is clearly established, but the degree of force that is reasonable varies based on the totality of the circumstances. *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). "To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted).

The district court concluded that the officers were entitled to qualified immunity on the excessive-force claim, and again, we agree. The only force the deputies used here was handcuffing, and Isaac has not demonstrated that the deputies violated clearly established law by handcuffing him. Rather, our court has been hesitant to conclude that handcuffing alone amounts to excessive force. On the contrary, we have held that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *see also Tarver v. City of Edna*, 410 F.3d 745, 751–52 (5th Cir. 2005) (holding that "'acute contusions of the wrist' and psychological injury from being handcuffed" were *de minimis* and insufficient to establish excessive force). In the absence of precedent establishing that handcuffing Isaac, under these circumstances, violates clearly established law, the deputies are entitled to qualified immunity.

Finally, we turn to the claim of warrantless entry. The district court found that the officers' warrantless entry was justified by exigent circumstances—specifically, "[i]mmediate safety risks to the officers." Moreover,

it was "[o]nly because Isaac Pollard requested to obtain an item from his bedroom" that the officers entered the home at all. These claims, however, seem to overlook the Pollards' contrary factual assertions, supported by deposition testimony, that Officer Perkins *told* Isaac to reenter the home, and for what appears to be a frivolous reason: Perkins desired to sit on the bed of Isaac's truck and therefore needed Isaac to retrieve his keys to open it.

In sum, the district court erred by treating the factual contentions of the movant officers—rather than the nonmovant plaintiffs—as true on summary judgment. We therefore VACATE the part of the district court's opinion discussing the warrantless-entry claim and REMAND for reconsideration of that claim.

We note that the Supreme Court recently reaffirmed that "the exigent-circumstances exception . . . requires a court to examine whether an *emergency* justified a warrantless search in a given case." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (emphasis added). This requires a "case-specific" analysis that considers the "totality of the circumstances," for only a fact-intensive analysis reflects "the nature of emergencies." *Id.* ("Whether a 'now or never situation' actually exists . . . depends upon facts on the ground."). On remand, if the district court once again finds that exigent circumstances justified the officers' warrantless entry, it should specify the "immediate safety risks" Isaac posed that created an emergency.

The district court's opinion is AFFIRMED IN PART and VACATED and REMANDED IN PART.